William P. Fennell (SBN 164210)
Of Counsel: Melissa A. Blackburn Joniaux (SBN 105470)
Of Counsel: Yosina M. Lissebeck (SBN 201654)
LAW OFFICE OF WILLIAM P. FENNELL, APLC
600 West Broadway, Suite 930
San Diego, CA 92101

Attorneys for Party in Interest/Creditor
UC Poway Post Holder, LLC

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No.: 21-03654-LT11 |
| POWAY PROPERTY, LP, | Chapter 11 |
| Debtor. | Honorable Laura S. Taylor |
| | ***EMERGENCY* MOTION FOR ORDER AUTHORIZING RECEIVER TO REMAIN IN POSSESSION OF ASSETS OF THE ESTATE PURSUANT TO BANKRUPTCY CODE SECTION 543(d), EXCUSING THE RECEIVER FROM COMPLYING WITH SECTIONS 543(a), (b) AND (c) OF THE BANKRUPTCY CODE** |

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# TABLE OF CONTENTS

**Page(s)**

Exigent Circumstances Exist……………………………………………………………...1

MEMORANDUM OF POINTS AND AUTHORITIES……………………..………2

    I.   STATEMENT OF FACTS …………………………………….…………3

        A.  The Project ……………………………………………………………3

        B.  Debtor Requests Additional Funding to Address
            Dewatering Issues ……………………………………………………..3

        C.  Movant Observes the Dewatering Issues …………………………..4

        D.  Debtor Defaults on the Loan, Terminates the
            General Contractor, and Abandons the Property …………………5

        E.  Lapse of Insurance ……………………………………………………6

        F.  The Dewatering Issues Need to be Remediated Immediately………6

    II. LEGAL ARGUMENT …………………………………………………….8

        A. Sufficient Cause Exists to Excuse the Receiver from
           Turnover Under Section 543(d)(1) in this Bankruptcy Case ……….9

            1.  Likelihood of a Successful Reorganization ……………..10

            2.  Available Funds for Reorganization ……………………11

            3.  Debtor's Mismanagement ………………………….……11

            4.  Use of Turned Over Property for the Benefit
               of Creditors ……………………………………………...11

            5.  Whether There is any Reason to Believe that Other
               Creditors' Interests Will Suffer by Keeping the
               Debtor Out of Possession of the Property ………………12

    III.  CONCLUSION …………………………………………………………12

    Exhibit 1 – Proposed Order…………………………………………...14 - 16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Sundance Corp.*
149 B.R. 641, 649 (Bankr. E.D. Wash. 1993)……………………………………...8, 10

*In re Orchards Vill. Invs., LLC*
405 B.R 341, 352 (Bankr. D. Or. 2009)……………………………………….....8, 10

*In re Corporate & Leisure Event Prods.*
351 B.R. 724, 732 (Bankr. D. Ariz. 2006)……………………………………………..8

*In re KCC-Fund V, Ltd.*
96 B.R. 237, 238 (Bankr. W.D. Mo. 1989)……………………………………………9

*In re Foundry of Barrington Partnership*
129 B.R. 550, 558 (Bankr. N.D. Ill. 1991)……………………………………………10

*In re Poplar Springs Apartments of Atlantic, Ltd.*
103 B.R. 146, 150 (Bankr. S.D. Ohio 1989)……………………………………….…10

## Federal Statutes

11 U.S.C. § 101(11)(A)……………………………………………………………....8

11 U.S.C. § 543……………………………………………………………………....12

11 U.S.C. § 543(a)……………………………………………………………..…1, 8, 9

11 U.S.C. § 543(b)……………………………………………………………….....…1

11 U.S.C. § 543(b)(1)…………………………………………………………..…..8, 9

11 U.S.C. § 543(c)………………………………………………………………....…1

11 U.S.C. § 543(d)……………………………………………………………..…1, 8, 9

11 U.S.C. § 543(d)(1)………………………………………………………………….9

## Secondary Authorities

5 COLLIER ON BANKRUPTCY ¶ 543.05 at 543-18 (16th ed. rev. 2011)…….10

UC Poway Post Holder, LLC ("Movant") hereby submits this *Emergency Motion* for order authorizing Superior Court receiver Douglas Wilson, of Douglas Wilson Companies, to remain in possession of and control property of the estate and per 11 USC section 543(d) excusing the Receiver from compiling with 543(a), (b) and (c) ("Emergency Motion") pursuant to Local Rule 9013-9.

This Emergency Motion is based upon the memorandum of points and authorities, the declarations of Greg Trotter and William P. Fennell and Request for Judicial Notice on file herewith and the pleadings and papers on file with the court and arguments of counsel at any hearing held on this matter.

Movant seeks relief from 11 U.S.C. § 543(a), (b) and (c) pursuant to 11 U.S.C. § 543(d) so Douglas Wilson, Receiver can remain in possession and control of the real property and Debtor's unfinished construction project in order to stabilize the Project[1], remediate the dewatering issues, continue construction of the foundation to prevent the development from floating and acquire appropriate insurance to protect the estate property in the event of loss.

**Exigent Circumstances Exist**

1. UC Poway Post Holder, LLC ("Movant"), the secured lender of a $21 million loan on the Project obtained an order on September 9, 2021, of the California Superior Court appointing Douglas Wilson as Receiver based upon the events set forth below. A copy of The Order Appointing Receiver signed by Judge Timothy Taylor, entered September 9, 2021 in the matter of *UC Poway Post Holder, LLC v. Poway Property, LP, et al.,* San Diego Superior Court of California, Case No. 37-2021-00036903-CU-BC-CTL is attached as Exhibit "D"[2] to the Request for Judicial Notice filed

---

[1] "Project" is defined below in paragraph A.1.
[2] Page 9, paragraph 25 of the Order, provides the Receiver's Duties in the event a bankruptcy case is filed. This Emergency Motion is made pursuant to the terms outlined in that section of the Order. This Motion does not seek to expand the duties of the Receiver.

1

herewith.

2. Debtor has defaulted on its construction loan, terminated the general contractor in March 2021, locked the Property and appears to have abandoned the Project. Debtor has also allowed the various insurance policies to lapse and to be cancelled.

3. Emergency relief is appropriate as the Project's foundation is incomplete, and the Project is facing significant dewatering issues that threaten the existing structure and could cause a catastrophic collapse. The Receiver was appointed; to oversee the dewatering remediation; put appropriate insurance coverage in place; to complete the foundation; to secure the project; and eliminate the potential risk that the existing structure floats causing a catastrophic collapse which would damage the Project and would be likely to damage adjacent properties and a public throughfare, Poway Road.

Further, since the appointment of the Receiver, Movant is informed and believes that the Debtor's Superintendent of the Developer, Capexco, Michael Watson, who had been overseeing the continual running of dewatering pumps is believed to have returned to Canada. Movant is informed and believes that Debtor is not monitoring these pumps. See Supplemental Declaration of Greg Trotter filed concurrently herewith ("Trotter Supp. Dec.") ¶ 5.

Exigent circumstances justify the Emergency relief from Section 543 for Receiver to remain in place as the dewatering issues pose a significant danger to the Project and the public and that could create a traffic hazard on a major highway in Poway, California if left unaddressed.

**MEMORANDUM OF POINTS AND AUTHORITIES**

UC Poway Post Holder, LLC submits the following Memorandum of Points and Authorities in Support of its Emergency Motion for Order Authorizing Receiver to Remain in Possession of Assets of the Estate Pursuant to Bankruptcy

Code Section 543(d), Excusing the Receiver from Complying with Sections 543(a), (b) and (c) of the Bankruptcy Code ("Memorandum of Points and Authorities") as follows:

## I. STATEMENT OF FACTS

**A.     The Project**

1. Debtor, Poway Properties, LP ("Debtor") is the owner and developer of a 1.55-acre mixed-use construction project located at 13247 Poway Road, Poway, CA 92064, ("Real Property" or "Project"). In October 2020, Debtor borrowed $21 million from Movant to complete the Project. See Request for Judicial Notice, Exhibit A, Declaration of D. Ross Pemmerl, dated September 7, 2021 ("Pemmerl Dec.") ¶ 5.

2. The Project is also known as the "Poway Outpost," the Project was zoned for 53 residential units and 40,000 square feet of commercial space. *Id.* ¶ Construction began in 2018. See Request for Judicial Notice, Exhibit B, Declaration of Greg Trotter dated September 7, 2021 ("Trotter Dec.") ¶ 6.

3. Midway through construction, Debtor sought additional financing. In October 2020, Debtor entered into a loan agreement and executed a Promissory Note, secured by a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing. Pemmerl Dec. ¶¶ 5-8, Exs. 1-3. On October 22, 2020, the lender assigned to Movant the right to payment under the Promissory Note, and all its rights under the loan agreement, and all of its rights under the Deed of Trust. *Id.* ¶ 10, Ex. 7.

**B.     Debtor Requests Additional Funding to Address Dewatering Issues**

4. Shortly after the loan closed, in December 2020, Debtor requested an additional $2 million from Movant to complete the Project. Pemmerl Dec. ¶ 11, Ex. 8. Debtor disclosed for the first time that the Project was suffering from significant dewatering issues and blamed the dewatering contractor for improperly designing and installing the dewatering system. *Id.* Debtor admitted

1  that the dewatering issues were causing considerable delays and increased costs.
2  *Id.*

3  **C.     Movant Observes the Dewatering Issues**

4      5.    In January 2021, Debtor requested of Movant an additional $4.2
5  million to address the dewatering issues. Pemmerl Dec. ¶ 12, Ex. 9. Movant did
6  not agree to Debtor's request for an additional $2 million in December 2020 or
7  Debtor's request for an additional $4.2 million in January 2021, in part because
8  Debtor had failed to previously inform Movant of the problem. *Id.*

9      6.    In January 2021, Movant was concerned about the status of the
10 Project and Debtor's (and Debtor's Guarantors') lack of communication. On
11 January 13, 2021, Movant's construction expert Greg Trotter, who has over 35
12 years of experience in the field, conducted a second of several site inspections of
13 the Project. Trotter Dec. ¶ 12. Other than the site superintendent, the Debtor had
14 left the Project site empty and there was no ongoing construction. *Id.* The
15 Project superintendent informed Trotter that concrete work had ceased in October
16 2020 (around the time the loan closed), framing work had ceased in December
17 2020, and that the general contractor was keeping a skeleton staff of three people
18 on the site for maintenance purposes. *Id.*

19     7.    The site superintendent also informed Trotter that the Project was
20 suffering from significant dewatering issues stemming from a high-water table
21 and underground river directly below the construction site (information which
22 had not been previously disclosed to Movant). Trotter Dec. ¶ 13. The site
23 superintendent showed Trotter the water pumps that the general contractor put in
24 place to temporarily address the dewatering issues. *Id.*

25     8.    Trotter immediately contacted Debtor's guarantor David Hall (the
26 operations manager of the developer Capexco, Inc.). Trotter Dec. ¶ 14. Hall
27 disclosed that the developer and owner were having money issues, that the Project
28 site was located directly above an underground river, and that it was imperative

4

that the water pumps remain active otherwise the unfinished foundation could become buoyant and float away. *Id.* Hall blamed the dewatering issues on the dewatering contractor – the dewatering wells needed to be 40 feet deep but were only drilled to a depth of 19 feet. *Id.* This failure to dig the wells deep enough was causing the foundation to fill in with water, preventing the concrete supplier from pouring enough concrete to complete the foundation. *Id.* And without the weight of a finished foundation to counteract the underground river, the existing structure was at risk of floating and causing a catastrophic collapse. *Id.* ¶ 15.

9. Hall assured Trotter that the pumps would remain active, and that the developer was in the process of obtaining another $2.5 million in financing, which would be used to complete the foundation. Trotter Dec. ¶ 16. Hall also indicated that the developer was pursing insurance claims against the dewatering contractor and expected to have additional money soon. *Id.* Hall assured Trotter that work on the project would resume shortly after the additional financing was in place, and the developer planned to remobilize the Project on February 1, 2021. *Id.*

D.  **Debtor Defaults on the Loan, Terminates the General Contractor, and Abandons the Property**

10. On February 1, 2021, Debtor failed to make a $104,474.31 interest payment to Plaintiff under the loan documents. Pemmerl Dec. ¶14. In failing to do so, Debtor breached the Promissory Note, was in default under the loan documents, and the balance of the loan became due and payable. *Id.*

11. On February 24, 2021, Trotter conducted another site visit of the Project. Trotter Dec. ¶ 17. Upon arriving at the Real Property, Trotter observed that the gate was locked, the Project appeared to be abandoned, and there was no staff or crew on site. *Id.* Trotter immediately contacted Hall for an explanation of why the site was abandoned when there were critical dewatering components operating. *Id.* ¶ 18. Hall did not know why the site was abandoned. *Id.* Hall

5

explained that the developer intended to terminate the general contractor and that the developer would keep a staff member on site seven days a week thereafter to keep the generator and wells operating. *Id.*

12. On March 8, 2021, Debtor terminated its general contractor KD Stahl and "officially" closed the Project. Trotter Dec. ¶ 20. On March 11, 2021, Trotter conducted another site visit of the Project with several other construction specialists. Trotter Dec. ¶ 21. Trotter confirmed that there was no construction crew on the Project site, and that the Project appeared to be abandoned. *Id*. He also noticed there were significant cracks in the concrete floors and walls, and that storm water had built up in the lower level of the parking garage. *Id.*

**E.    Lapse of Insurance**

13. In August 2021, Movant learned that Debtor let the general liability insurance policy on the Project lapse. Pemmerl Dec. ¶ 18.

14. To date, the Project remains abandoned, there is no construction crew on site, and the gate is locked. See Request for Judicial Notice, Exhibit C, Declaration of Keith Cochran, dated September 8, 2021 ("Cochran Dec.") ¶ 3, Ex. 18. Additionally, nine subcontractors and the former general contractor KD Stahl Construction Group Inc. have filed lawsuits in San Diego Superior Court against Debtor arising from the Project. As of the time of filing this Emergency Motion counsel for all 10 of the Superior Court plaintiffs have been contacted, by undersigned counsel to provide notice of this Emergency Motion. Someone from undersigned counsel's firm has spoken with counsel for eight of those plaintiff firms and each has agreed to accept service by email of this Emergency Motion.

15. Debtor's counsel in this bankruptcy proceeding, David Speckman appeared at the September 9, 2021, hearing for Appointment of a Receiver.

**F.    The Dewatering Issues Need to be Remediated Immediately**

16. The developer and Debtor have been unsuccessful in obtaining additional financing to complete the Project. Trotter Dec. ¶ 24. Other than a

6

single person on site to run the water pumps up until the week of September 9, 2021, the Project remained largely abandoned. *Id.* Movant is informed and believes the Project is presently completely abandoned.

17. There has been no progress on the site since December 2020, and there does not appear to be any plan in place to finish construction or address the dewatering issues. *Id.* Given the owner's financial distress, there are serious concerns about Debtor's commitment to the Real Property going forward, and whether it has the money available to keep an employee on site to continuously run the water pumps. *Id.*

18. Greg Trotter has conducted several site visits and has serious concerns about the existing dewatering issues. Trotter Dec. ¶¶ 24-27. Trotter has opined that the current condition of the foundation and the significant dewatering issues are a hazard that need to be immediately addressed. If the pumps stop running, then the ground water will return to normal height and flood the unfinished garage. Trotter Dec. ¶ 25. If flooding occurs, it could cause the existing structure to "float." *Id.* The existing structure is connected to sanitary sewer lines, water lines, and other utilities. *Id.* If the building floats or collapses, this could destroy municipal utility systems causing the city significant problems. *Id.* It could also damage adjoining structures, including a funeral home next door. *Id.* And because the Project borders Poway Road, if the existing structure collapses, it could create a serious traffic hazard on a major highway in Poway. *Id.*

19. Further, the existing water pumps in place are insufficient to keep pace with heavy rains. Trotter Dec. ¶ 26. A heavy storm in San Diego could overwhelm the water pumps and cause a catastrophic collapse of the existing structure. *Id.* With the rainy season approaching, the Project is at risk. Simply put, the existing foundation is vulnerable in its unfinished state and poses a significant hazard.

7

20. Trotter has opined that the water pumps must be immediately secured to ensure that water does not continue to build up in the base of the foundation. Trotter Dec. ¶ 27. Trotter has further opined that after securing the water pumps, additional concrete needs to be poured in order to finish the foundation. *Id.* Completing the foundation is the only way to permanently address the dewatering issues and overcome the pressure of the underground river. *Id.*

## II. LEGAL ARGUMENT

Section 543(a) provides that once a custodian acquires knowledge of the commencement of a case under the Bankruptcy Code, the custodian's administration, in essence, is suspended, except for such action as is necessary to preserve property. Section 543(b)(1) further provides that a custodian shall deliver to the trustee (or debtor in possession) any property of the debtor the custodian then holds or controls. "Custodian" is defined as a "receiver . . . of any property of the debtor, appointed in a case or proceeding not under this title." 11 U.S.C. § 101(11)(A). "Upon the filing of a bankruptcy, a state court receiver generally may not make disbursements, and must turn over the property to the bankruptcy trustee and account to the bankruptcy court for the property which came into its possession." *In re Sundance Corp.*, 149 B.R. 641, 649 (Bankr. E.D. Wash. 1993).

However, section 543(d) provides the Court with authority to excuse a custodian from compliance with the preceding subsections if the interests of creditors (and the debtor under very limited circumstances) would be better served by permitting retention of administrative control and possession of assets. *See In re Orchards Vill. Invs., LLC*, 405 B.R 341, 352 (Bankr. D. Or. 2009); *In re Corporate & Leisure Event Prods.*, 351 B.R. 724, 732 (Bankr. D. Ariz. 2006) ("Even though the ordinary rule is that receivers must turn over estate property to a debtor in possession or trustee . . . the bankruptcy courts have discretion to

waive that requirement if the interests of creditors would be better served by continuing the receiver in possession."); *In re KCC-Fund V, Ltd.*, 96 B.R. 237, 238 (Bankr. W.D. Mo. 1989). This Court may therefore excuse the Receiver from his statutory turnover obligations.

The facts of this case support excusing the Receiver, Douglas Wilson, from his obligations under sections 543(a) and (b)(1) so that he can take necessary action to see that dewatering pumps are maintained, take appropriate steps to evaluate if the pumps are adequate and performing to specifications necessary to protect the Project. Additionally, the Receiver cannot take immediate action to obtain insurance necessary and appropriate for the protection of the property of the estate from lose without relief from compliance with subsections (a) and (b)(1). The history this Project has described in the supporting declarations demonstrate the Debtor's inability to take the steps necessary to protect property of the estate for more than nine months. Currently, the Project appears to be completely unsupervised by the Debtor. And the Debtor has a history of leaving the property unsupervised. It has done so at various points in time over the last nine months. See Trotter Dec. ¶ 22.

**A.    Sufficient Cause Exists to Excuse the Receiver from Turnover Under Section 543(d)(1) in this Bankruptcy Case.**

While the Bankruptcy Code does not provide any specific test for determining whether a custodian should be granted relief under section 543(d), courts have established several exemplary criteria for making this determination. In general, bankruptcy courts have looked at: (1) the likelihood of successful reorganization; (2) the probability that funds required for reorganization will be available; (3) whether there are prior instances of mismanagement by the debtor; (4) whether the debtor will use the turned-over property for the benefit of creditors; and (5) whether there is any reason to believe that other creditors' interests will suffer by keeping the debtor out of possession of the property. *See,*

9

*e.g., In re Orchards Vill. Invs., LLC*, 405 B.R 341, 352-53 (Bankr. D. Or. 2009); *In re Foundry of Barrington Partnership*, 129 B.R. 550, 558 (Bankr. N.D. Ill. 1991).

Where turnover is excused, "[p]repetition custodians who continue to serve postpetition are charged with and limited to the preservation and care of the property under their control in accordance with the orders governing their appointment." 5 COLLIER ON BANKRUPTCY ¶ 543.05 at 543-18 (16th ed. rev. 2011). "With regard to state court appointed receivers, such receivers are representatives of the appointing court, holding property in custodia legis as court officers, with only the power and authority given to them by the appointing court, which may not be exceeded without court authorization." Id.; see also *Sundance*, 149 B.R. at 649.

### 1. Likelihood of a Successful Reorganization.

Here the Debtor commenced this case by filing the "bare bones" minimum necessary to commence a case, it did not include schedules or a statement of financial affairs and to the extent there is a list of creditors nine of the 12 creditors listed did not include addresses. Further, Movant is informed and believes that at the time of filing there was no signed agreement with a general contractor to continue work on the Project. See Declaration of William P. Fennell filed herewith ("Fennell Dec.") ¶ 3. While the Receiver had just propounded his requests for documents and records from the Debtor and had not received a response as of the date of filing, it would be beneficial to the estate to have a professional examine the documents of the Debtor. "[K]eeping this Receiver in place temporarily while books and records are being sorted through, cash flow projections made and decisions regarding disposition of assets are being addressed could be an advantage rather than a disadvantage to the reorganizations of these debtors." *In re Poplar Springs Apartments of Atlantic, Ltd.*, 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989). Additionally, while the Motion and

supporting declarations demonstrate little chance of reorganization, the Debtor and its principals/guarantors have a demonstrated history of fraudulent conduct and financial mismanagement to justify keeping the Receiver in place.

**2. Available Funds for Reorganization.**

As the Debtor has filed a bare bones petition there is no indication that it has any funds available for reorganization. Immediately after closing the loan with Movant the Debtor sought an additional loan of $2 million. See Pemmerl Dec. ¶ 11. Further, there is every indication from the facts stated in Mr. Trotter's declaration setting forth observations from several visits to the Project that the Project went from 43 construction workers in September 2020, to only the Superintendent of the Developer, Capexco, Michael Watson in January 2021, to no one on site and the Project locked up and appearing to be abandoned as early as February 2021. Trotter Dec. ¶¶ 8, 12 and 17. Further, Movant is informed and believes that the dewatering pumps were not running for several days in March 2021, Trotter Dec. ¶ 22, as utility bills were reportedly in arrears for a period of about six months.

**3. Debtor's Mismanagement**

Here, the Debtor has completely and thoroughly mismanaged the Project. Most recently it has allowed the general liability insurance policy to lapse and allowed a builder's risk policy to be cancelled, leaving the Project without any insurance to protect the property of the estate for the benefit of any creditors. See Pemmerl Dec ¶ 16. Further, after March of 2021 the Project has been without a general contractor and the Debtor allowed this to happen reportedly by firing the original general contractor in March 2021 without a replacement.

**4. Use of Turned Over Property for the Benefit of Creditors.**

The Receiver, Douglas Wilson was appointed by the Superior Court for the purpose of safeguarding the Project. The Order Appointing the Receiver states the Receiver was appointed to take possession, custody, and control of the

Receivership Property…to protect the Receivership Property. The order goes on to say that the Receiver shall have the usual and customary powers of a receiver to take control of and preserve the Receivership Property, in addition to the duties and powers enumerated in that Order. The reason the Movant sought the appointment of a receiver was to oversee that the dewatering system, so that it would remain operational and determine that the dewatering pumps will be adequate for the job going forward and into Southern California rainy season. Additionally, Receiver is to see that insurance would be obtained to protect the Real Property and the Project for the benefit of all creditors including the Movant. The purpose of the receivership estate is unchanged by the Debtor's filing of a bankruptcy. There is nothing to indicate that the Debtor is ready or has the wherewithal to step up and take control of these key functions of the Project. The Court has before it evidence provided by the Movant that without the dewatering system in place the Project could begin to float causing damage to two adjacent properties and causing catastrophic damage to the Project itself.

**5. Whether There is any Reason to Believe that Other Creditors' Interests Will Suffer by Keeping the Debtor Out of Possession of the Property.**

There is no reason to believe that excusing the Receiver from compliance with Section 543 would adversely affect other creditors of the bankruptcy estate. In fact, the best way to preserve the Project is with immediate attention to the dewatering system and acquiring appropriate general liability insurance which will benefit the bankruptcy estate. Douglas Wilson is prepared and willing to continue to act according to the Order for Appointment of Receiver.

### III. CONCLUSION

WHEREFORE, for the reasons set forth herein, Movant respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit "1" with the terms as follows:

///

a. Granting the relief requested in the Motion allowing the Receiver to remain in possession of assets of the estate pursuant to Bankruptcy Code Section 543(d);

b. Excusing the Receiver from Complying with Sections 543(a), (b) and (c) of the Bankruptcy Code;

c. Allow Receiver to remain in possession and control of the real property and Debtor's unfinished construction project in order to stabilize the Project, remediate the dewatering issues and continue construction of the foundation to prevent the development from floating;

d. Allow Receiver to acquire appropriate insurance to protect the real property and the estate from loss; and

e. For such other and further relief as the Court deems just and proper.

Dated:  September 16, 2021            LAW OFFICE OF WILLIAM P. FENNELL, APLC

                                      By:/s/ William P. Fennell
                                      William P. Fennell, Esq.
                                      Attorneys for UC Poway Post Holder, LLC

# **PROPOSED ORDER**

EXHIBIT 1
Page 14

CSD 1001A  [07/01/18]
Name, Address, Telephone No. & I.D. No.

William P. Fennell (SBN 164210)
Of Counsel: Melissa A. Blackburn Joniaux (SBN 105470)
Of Counsel: Yosina M. Lissebeck (SBN 201654)
LAW OFFICE OF WILLIAM P. FENNELL, APLC
600 W. Broadway, Suite 930
San Diego, CA 92101      Tel: (619) 325-1560
Attorneys for UC Poway Post Holder, LLC

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re

POWAY PROPERTY, LP,

Debtor.

BANKRUPTCY NO. 21-03654-LT11

Date of Hearing:
Time of Hearing:
Name of Judge: Laura S. Taylor

### (PROPOSED) ORDER ON
***EMERGENCY* MOTION FOR ORDER AUTHORIZING RECEIVER TO REMAIN IN POSSESSION OF ASSETS OF THE ESTATE PURSUANT TO BANKRUPTCY CODE SECTION 543(d), EXCUSING THE RECEIVER FROM COMPLYING WITH SECTIONS 543(a), (b) AND (c) OF THE BANKRUPTCY CODE**

The court orders as set forth on the continuation pages attached and numbered  2  through 2 with exhibits, if any, for a total of  2  pages. Motion/Application Docket Entry No. _____ .

//

//

//

//

//

//

//

DATED: _____

_____
Judge, United States Bankruptcy Court

EXHIBIT 1
Page 15

(PROPOSED) ORDER ON *EMERGENCY* MOTION FOR ORDER AUTHORIZING RECEIVER TO REMAIN IN POSSESSION OF ASSETS OF THE ESTATE PURSUANT TO BANKRUPTCY CODE SECTION 543(d), EXCUSING THE RECEIVER FROM COMPLYING WITH SECTIONS 543(a), (b) AND (c) OF THE BANKRUPTCY CODE
DEBTOR: POWAY PROPERTY, LP                                          CASE NO: 21-03654-LT11

---

The Court, having read the *Emergency* Motion of UC Poway Post Holder, LLC ("Movant") for an Order Authoring Receiver to Remain in Possession Assets of the Estate Pursuant to Bankruptcy Code Section 543(d), Excusing the Receiver from Complying with Sections 543(a), (b) and (c) of the Bankruptcy Code ("Motion"), and it appearing to the Court that cause exists to grant the relief requested on an emergency basis under Local Rule 9013-9, et seq., and good cause appearing therefore,

IT IS HEREBY ORDERED as follows:

1. The Motion is granted;
2. The Receiver is to remain in possession of assets of the estate pursuant to Bankruptcy Code Section 543(d);
3. The Receiver is excused from Complying with Sections 543(a), (b) and (c) of the Bankruptcy Code;
4. The Receiver is to remain in possession and control of the real property and Debtor's unfinished construction project in order to stabilize the Project, remediate the dewatering issues and continue construction of the foundation to prevent the development from floating;
5. The Receiver is to acquire appropriate insurance to protect the real property and the estate from loss; and
6. Counsel for Movant shall serve a copy of this entered order on all creditors and parties in interest in this case.