(b)    Without limiting or waiving any other rights and remedies of Lender hereunder, if Lender determines that Borrower is not adequately performing or has failed to perform any of its obligations, covenants or agreements contained in this Security Instrument or in any of the other Loan Documents, and such inadequacy or failure is not cured within any applicable grace or cure period, or if any action or proceeding of any kind (including, but not limited to, any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding) is commenced which might affect Lender's interest in the Property or Lender's right to enforce its security, then Lender may, at its option, with or without notice to Borrower, make any appearances, disburse or advance any sums and take any actions as may be necessary or desirable to protect or enforce the security of this Security Instrument or to remedy the failure of Borrower to perform its covenants and agreements (without, however, waiving any default of Borrower).  Borrower agrees to pay on demand all expenses of Lender reasonably incurred with respect to the foregoing (including, but not limited to, fees and disbursements of counsel), together with interest thereon at the Default Interest Rate from and after the date on which Lender incurs such expenses until reimbursement thereof by Borrower.  Any such expenses so incurred by Lender, together with interest thereon as provided above, shall be additional indebtedness of Borrower secured by this Security Instrument and by all of the other Loan Documents securing all or any part of the Indebtedness.  The necessity for any such actions and of the amounts to be paid shall be determined by Lender in its sole and absolute discretion. Lender is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Borrower or any person in possession holding under Borrower.  Borrower hereby acknowledges and agrees that the remedies set forth in this Section shall be exercisable by Lender, and any and all payments made or costs or expenses incurred by Lender in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Borrower with interest thereon at the Default Interest Rate notwithstanding the fact that such remedies were exercised and such payments made and costs incurred by Lender after the filing by Borrower of a voluntary case or the filing against Borrower of an involuntary case pursuant to or within the meaning of the Bankruptcy Reform Act of 1978, as amended (the "**Bankruptcy Act**"), Title 11 U.S.C., or after any similar action pursuant to any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable to Borrower, Lender, any guarantor or indemnitor, the Indebtedness or any of the Loan Documents. This indemnity shall survive payment in full of the Indebtedness.  This Section shall not be construed to require Lender to incur any expenses, make any appearances or take any actions.

1.10    <u>Security Interest</u>.  This Security Instrument is also intended to encumber and create a security interest in, and Borrower hereby grants to Lender a security interest in, all Reserves held by Lender pursuant to the terms of the Loan Agreement, all fixtures, chattels, accounts, equipment, inventory, contract rights, general intangibles and other personal property included within the Property, all renewals, replacements of any of the aforementioned items, or articles in substitution therefor or in addition thereto or the proceeds thereof (collectively, the "**Personal Property Collateral**"), whether or not the same shall be attached to the Property in any manner.  It is hereby agreed that, to the extent permitted by law, all of the foregoing property is to be deemed and held to be a part of and affixed to the Real Estate and the Improvements. The foregoing security interest shall also cover Borrower's leasehold interest in any of the foregoing property which is leased by Borrower.  Notwithstanding the foregoing, all of the

foregoing property shall be owned by Borrower and no leasing or installment sales or other financing or title retention agreement in connection therewith shall be permitted without the prior written approval of Lender. Borrower shall promptly replace all of the Personal Property Collateral subject to the lien or security interest of this Security Instrument when worn out or obsolete with Personal Property Collateral comparable to the worn out or obsolete Personal Property Collateral when new and will not, without the prior written consent of Lender, remove from the Property any of the Personal Property Collateral subject to the lien or security interest of this Security Instrument except such as is replaced by an article of equal suitability and value as above provided, owned by Borrower free and clear of any lien or security interest except that created by this Security Instrument and the other Loan Documents and except as otherwise expressly permitted by the terms of Section 2.10 of the Loan Agreement. All of the Personal Property Collateral shall be kept at the location of the Real Estate. Borrower shall not use any of the Personal Property Collateral in violation of any applicable statute, ordinance, insurance policy, or agreement.

1.11    Security Agreement.

(a)     This Security Instrument constitutes both a real property mortgage, deed of trust or deed to secure debt, as applicable, and a "**security agreement**" and "**fixture filing**" between Borrower and Lender with respect to the Personal Property Collateral in which Lender is granted a security interest hereunder, and, cumulative of all other rights and remedies of Lender hereunder, Lender shall have all of the rights and remedies of a secured party under any applicable Uniform Commercial Code. Borrower hereby agrees to execute and deliver on demand and hereby irrevocably constitutes and appoints Lender the attorney-in-fact of Borrower to execute and deliver and, if appropriate, to file with the appropriate filing officer or office such security agreements, financing statements, continuation statements or other instruments as Lender may request or require in order to impose, perfect or continue the perfection of the lien or security interest created hereby.

(b)     Borrower will not change its principal place of business or chief executive office, or change the State of its organization or registration, or change its name, without in each instance the prior written consent of Lender, which consent shall not be unreasonably withheld, delayed or conditioned. Lender's consent will, however, be conditioned upon, among other things, the execution and delivery of additional financing statements, security agreements and other instruments which may be necessary to effectively evidence or perfect Lender's security interest in the Personal Property Collateral as a result of such changes.

(c)     In the event of a foreclosure sale, the Property may, at the option of Lender, be sold as a whole or Lender may dispose of any Personal Property Collateral separately from the sale of the Real Estate and Improvements, in any manner permitted by Article 9 of the Uniform Commercial Code, including any public or private sale, or in any manner permitted by any other applicable law.

(d)     In connection with the sale of the Personal Property Collateral separate and apart from the Real Estate and Improvements (i) any proceeds of any disposition shall not cure any Event of Default or reinstate any Indebtedness for purposes of Section 2924c of the

California Civil Code, and (ii) Borrower agrees that the following procedures constitute a commercially reasonable sale:

(A)     Lender shall mail written notice of the sale to Borrower not later than forty-five (45) days prior to such sale;

(B)     Once per week during the four weeks immediately preceding such sale, Lender will publish notice of the sale in a local daily newspaper of general circulation; and

(C)     Upon receipt of any written request, Lender will make the Personal Property Collateral available to any bona fide prospective purchaser for inspection during reasonable business hours.

Lender shall not, however, be under any obligation to consummate a sale if, in its judgment, none of the offers received by it equals the fair value of the Personal Property Collateral offered for sale.   Further, the foregoing procedures do not constitute the only procedures that may be commercially reasonable

(e)     In addition to or in substitution for the rights and remedies available to Lender pursuant to any applicable Uniform Commercial Code:

(i)     It shall not be necessary that Lender take possession of the aforementioned Personal Property Collateral, or any part thereof, prior to the time that any sale pursuant to the provisions of this Section is conducted and it shall not be necessary that said Personal Property Collateral, or any part thereof, be present at the location of such sale; and

(ii)     Lender may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Lender, including the sending of notices and the conduct of the sale, but in the name and on behalf of Lender.

(f)     Expenses of retaking, holding, preparing for sale, selling or the like (including, without limitation, Lender's reasonable attorneys' fees and legal expenses), together with interest thereon at the Default Interest Rate from the date incurred by Lender until actually paid by Borrower, shall be paid by Borrower on demand and shall be secured by this Security Instrument and by all of the other Loan Documents securing all or any part of the Indebtedness

1.12   Assignment of Leases and Rents.

(a)     Borrower hereby presently, absolutely, and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute, and unconditional assignment and not an assignment for additional security only.   Nevertheless, subject to the terms of the Assignment of Leases and Rents of even date herewith by Borrower in favor of Lender and Section 1.12(b) below, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents.   Borrower shall hold the Rents, or a portion thereof

sufficient to discharge all current sums due on the Indebtedness, for use in the payment of such sums.

(b)    If an Event of Default occurs then, in addition to any remedies Lender may have hereunder or under any of the other Loan Documents, the license granted to Borrower under Section 1.12 (a) above shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Indebtedness, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments, insurance premiums, and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees.

1.13    Easements and Rights-of-Way.    Borrower shall not grant any easement or right-of-way with respect to all or any portion of the Property without the prior written consent of Lender.  The purchaser at any foreclosure sale hereunder may, at its discretion, disaffirm any easement or right-of-way granted in violation of any of the provisions of this Security Instrument and may take immediate possession of the Property free from, and despite the terms of, such grant of easement or right-of-way.  If Lender consents to the grant of an easement or right-of-way, Lender agrees to grant such consent without charge to Borrower other than reasonable expenses; including, without limitation, reasonable attorneys' fees, incurred by Lender in the review of Borrower's request and, if applicable, in the preparation of documents relating to the subordination of this Security Instrument to such easement or right-of-way.

1.14    Borrower's Waiver of Rights of Redemption, Marshalling and Other Rights.    To the full extent permitted by law, Borrower agrees that Borrower shall not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, moratorium or extension, or any law now or hereafter in force providing for the reinstatement of the Indebtedness prior to any sale of the Property to be made pursuant to any provisions contained herein or prior to the entering of any decree, judgment or

order of any court of competent jurisdiction, or any right under any statute to redeem all or any part of the Property so sold. To the full extent permitted by law, Borrower shall not have or assert any right under any statute or rule of law pertaining to the exemption of homestead or other exemption under any federal, state or local law now or hereafter in effect, the administration of estates of decedents or any other matters whatsoever to defeat, reduce or affect the right of Lender under the terms of this Security Instrument to a sale of the Property, for the collection of the Indebtedness without any prior or different resort for collection, or the right of Lender under the terms of this Security Instrument to the payment of the Indebtedness out of the proceeds of sale of the Property in preference to every other claimant whatever. Borrower, for Borrower and Borrower's successors and assigns, and for any and all persons ever claiming any interest in the Property, to the full extent permitted by law, hereby knowingly, intentionally and voluntarily with and upon the advice of competent counsel waives, releases, relinquishes and forever forgoes: (a) all rights of valuation, appraisement, stay of execution, reinstatement and notice of election or intention to mature or declare due the Indebtedness (except such notices as are specifically provided for herein); (b) all right to a marshaling of the assets of Borrower, including the Property, to a sale in the inverse order of alienation, or to direct the order in which any of the Property shall be sold in the event of foreclosure of the liens and security interests hereby created and agrees that any court having jurisdiction to foreclose such liens and security interests may order the Property sold as an entirety; (c) all rights and periods of redemption provided under applicable law; (d) all present and future statutes of limitations as a defense to any action to enforce the provisions of this Security Instrument or to collect any of the Indebtedness to the fullest extent permitted by law, and agrees that it shall not solicit or aid the solicitation of the filing of any petition against Borrower, whether acting on its own behalf or on behalf of any other party; (e) the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender under the Loan Documents; (f) any defense Borrower might have by reason of Lender's failure to make any tenant of the Property a defendant in any foreclosure proceeding instituted by Lender; and (g) any right to notice from Lender, except as expressly provided in this Security Instrument, the Loan Agreement or the other Loan Documents. Without limiting the generality of the foregoing, Borrower shall not (i) provide information regarding the identity of creditors or the nature of creditors' claims to any third party unless compelled to do so by order of a court of competent jurisdiction or by regulation promulgated by a governmental agency; or (ii) pay the legal fees or expenses of any creditor of or interest holder in Borrower with respect to any matter whatsoever.

1.15   <u>Contractual Statute of Limitations</u>.   Borrower hereby agrees that any claim or cause of action by Borrower against Lender, or any of Lender's directors, officers, partners, members, employees, agents, accountants or attorneys, based upon, arising from or relating to the Indebtedness, or any other matter, cause or thing whatsoever, whether or not relating thereto, occurred, done, omitted or suffered to be done by Lender or by Lender's directors, officers, partners, members, employees, agents, accountants or attorneys, whether sounding in contract or in tort or otherwise, shall be barred unless asserted by Borrower by the commencement of an action or proceeding in a court of competent jurisdiction by the filing of a complaint within one (1) year after Borrower first acquires or reasonably should have acquired knowledge of the first act, occurrence or omission upon which such claim or cause of action, or any part thereof, is based and service of a summons and complaint on an officer of Lender or any other person authorized to accept service of process on behalf of Lender, within thirty (30) days thereafter. Borrower agrees that such one (1) year period of time is reasonable and sufficient time for a

borrower to investigate and act upon any such claim or cause of action. The one (1) year period provided herein shall not be waived, tolled or extended except by the specific written agreement of Lender. This provision shall survive any termination of this Security Instrument or any of the other Loan Documents.

    1.16   <u>Management</u>. Borrower shall provide for management of the Property in accordance with the terms of Section 2.21 of the Loan Agreement.

**ARTICLE 2**
**EVENTS OF DEFAULT**

    2.01   <u>Events of Default</u>. The occurrence of an Event of Default, as defined in Section 3.01 of the Loan Agreement, shall constitute an Event of Default under this Security Instrument.

**ARTICLE 3**
**REMEDIES**

    3.01   <u>Remedies Available</u>.

    (a)   If an Event of Default exists, Lender may elect to foreclose the interest of Lender in the Property. Commencement of such an action shall be deemed a declaration by Lender that any and all of the Indebtedness is due and payable immediately. Upon the election of Lender to effect a trustee's sale of the Property in lieu of judicial foreclosure, then Lender may instruct Trustee to commence such sale and consummate such sale in the following manner:

    (i)   Lender shall initiate such action by delivery to Trustee of a written declaration of the Event of Default and demand for sale and of written notice of the Event of Default and of election to cause to be sold the portion of the Property designated by Lender, which notice Trustee shall cause to be duly filed for record in case of foreclosure by exercise of the power of sale herein. Should Lender elect to foreclose by exercise of the power of sale herein, Lender shall also deposit with Trustee this Security Instrument and the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require, and notice of sale having been given as then required by law and after lapse of such time as may then be required by law after recordation of such notice of the Event of Default, Trustee, without demand on Borrower, shall sell the portion of the Property designated by Lender at the time and place of sale fixed by it in such notice of sale as Lender may direct, either as a whole or in separate parcels, as Lender may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Lender shall have the right to direct the order in which separate parcels shall be sold and Borrower shall have no right to direct the order in which separate parcels shall be sold. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Any person, including Borrower, Trustee or Lender may purchase at such sale. Lender may proceed as to the portion of the Property constituting personal property in accordance with Lender's rights and remedies in respect to the

remainder of the Property or sell the portion of the Property constituting personal property separately and without regard to the remainder of the Property in accordance with Lender's rights and remedies provided by the Uniform Commercial Code as well as other rights and remedies available at law or in equity.  Borrower waives all rights to direct the order in which any of the Property shall be sold in the event of any sale under this Security Instrument, and also any right to have any portion of the Property marshalled upon any sale.

(ii)    Lender, from time to time before the Trustee's sale pursuant to this Section 3.01(a), may rescind any notice of breach or the Event of Default and of election to cause to be sold the Property by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of an Event of Default and demand for sale.  The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or Event of Default then existing or subsequently occurring or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations of an Event of Default and demand for sale, and notices of breach or Event of Default, the obligations hereof, nor otherwise affect any provisions, covenant or condition of the Note and/or of this Security Instrument or any of the rights, obligations or remedies of the parties thereunder or hereunder.

(iii)    Trustee shall deliver to the purchaser at any such trustee's sale its deed, without warranty, which shall convey to the purchaser the interest in the Property then sold which Borrower has or has the power to convey at the time of the execution of this Security Instrument, and such as it may have acquired hereafter.  The Trustee's deed shall recite the facts showing that the sale was conducted in compliance with all the requirements of law and of this Deed of Trust, which recital shall be prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrances for value.

(iv)    In the case of a sale under this Deed of Trust, the Property, real, personal and mixed, may be sold in one parcel or more than one parcel.

(v)    Upon any sale made under or by virtue of this Section (whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale) (any such sale or disposition, a "**Foreclosure Sale**;" and any two or more, "**Foreclosure Sales**")), Lender may bid for and acquire the Property, or any part thereof, and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the indebtedness secured hereby the net sale price after deducting therefrom the expenses of the sale and the costs of the action and any other sums which Lender is authorized to deduct under this Security Instrument.

(vi)    In the event of any Foreclosure Sale, the entire Indebtedness, if not previously due and payable, immediately thereupon shall, anything in the Note or in this Security Instrument to the contrary notwithstanding, become due and payable.

NY 00058811 v1

14

(b)      If an Event of Default exists, Lender may enter upon and take possession of the Property, or any part thereof, with or, to the extent permitted by law, without judicial process, and, in connection therewith, without any responsibility or liability on the part of Lender, take possession of any personal property located on or in the Property and hold or store such property at Borrower's expense and Lender may exercise any or all of the remedies available to a secured party under the Uniform Commercial Code including the following: Lender may require Borrower to assemble the personal property constituting part of the Property, and make such available to Lender at a place to be designated by Lender which is reasonably convenient to Borrower and Lender. After notification, if any, as hereafter provided in this subsection, Lender may sell, lease, or otherwise dispose of (herein, a "**disposition**"), at the office of Lender, or at the Property, or elsewhere, as chosen by Lender, all or any part of said personal property in its then condition or following any commercially reasonable preparation or processing, and each disposition may be as a unit or in parcels, by public or private proceedings, and by way of one or more contracts, and, at any disposition, it shall not be necessary to have present or exhibit said personal property, or any part thereof being sold. The disposition of any part of said personal property shall not exhaust Lender's power of disposition, but dispositions may be made from time to time until the Indebtedness is paid and performed in full. Reasonable notification of the time and place of any public disposition pursuant to this subsection, or reasonable notification of the time after which any private disposition is to be made pursuant to this subsection, shall be sent to Borrower and to any other person entitled to receive notice under the Uniform Commercial Code. It is agreed that notice sent or given not less than five (5) calendar days prior to the taking of the action to which the notice relates, is reasonable notification for the purposes of this subsection.

(c)      If an Event of Default exists, Lender may bring an action in a court of competent jurisdiction to foreclose this instrument or to enforce any of the covenants hereof.

(d)      If an Event of Default exists, Lender may revoke the license granted to Borrower under the Assignment and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and may also do any and all other things in connection with those actions that Lender may in its sole discretion consider necessary and appropriate to protect the security of this Security Instrument and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be

NY 00058811 v1

15

evicted by summary proceedings or otherwise; (vii) apply the receipts from the Property to the payment of the Indebtedness, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Impositions, all ground rent, maintenance charges, impositions other than Impositions, and any other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Property, now or hereafter levied or assessed or imposed against the Property or any part thereof (collectively, "**Other Charges**"), insurance and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees, and (viii) if Lender so requests, Borrower shall assemble all of the personal property has been removed from the real estate encumbered hereby and make all of it available to Lender at the site of the real estate and in furtherance thereof, Borrower hereby irrevocably constitutes and appoints Lender as Borrower's attorney-in-fact to perform such acts and execute such documents as Lender in its sole discretion may consider to be appropriate in connection with taking these measures, including endorsement of Borrower's name on any instruments;

(e)     Lender shall, as a matter of right, without notice and without giving bond to Borrower or anyone claiming by, under or through Borrower, and without regard for the solvency or insolvency of Borrower or the then value of the Property, pursuant to California Civil Code Section 2929.5 or other applicable law, be entitled to have a receiver appointed for all or any part of the Property and the Rents, and the proceeds, issues and profits thereof, with the rights and powers referenced below and such other rights and powers as the court making such appointment shall confer, and Borrower hereby consents to the appointment of such receiver and shall not oppose any such appointment.  Such receiver shall have all powers and duties prescribed by applicable law, all other powers which are necessary or usual in such cases for the protection, possession, control, management and operation of the Property, and such rights and powers as Lender would have, upon entering and taking possession of the Property under this Section 3.01.  Without limiting the generality of the foregoing, Lender shall have the right to appoint a receiver in order to enforce Lender's rights under Section 2929.5 of the California Civil Code.

(f)     Lender may elect to treat any of the Property which consists of a right in action or which is property that can be severed from the Real Estate and the Improvements without causing structural damage thereto as if the same were personal property, and proceed against such property in accordance with Section 1.11 above;

(g)     Lender may institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement or in any of the other Loan Documents;

(h)     Lender may recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or any of the other Loan Documents; and

(i)     Lender may apply any sums then deposited in any reserve accounts and any other sums held in escrow or otherwise by or for the benefit of Lender under this Security

Instrument, the Loan Agreement or any of the other Loan Documents to the payment of the Indebtedness.

3.02    Other Remedies.

(a)    Lender may exercise all rights and remedies contained in any other instrument, document, agreement or other writing heretofore, concurrently or in the future executed by Borrower or Guarantor or any other person or entity in favor of Lender in connection with the Indebtedness or any part thereof, without prejudice to the right of Lender thereafter to enforce any appropriate remedy against Borrower or Guarantor.  Lender shall have the right to pursue all remedies afforded to a beneficiary under a deed of trust under applicable law, and shall have the benefit of all of the provisions of such applicable law, including all amendments thereto which may become effective from time to time after the date hereof.

(b)    CCP Sections 726.5 and 736.  Without limiting the terms of Section 3.02(a), Lender may (i) in accordance with California Code of Civil Procedure Section 736, as such Section may be amended from time to time, recover any costs, expenses or liabilities, including without limitation attorneys' fees, incurred by Lender and arising from any breach of any covenant, warranty or agreement pertaining to any environmental requirements, or any order, consent decree or settlement relating to the cleanup of toxic or hazardous waste or waste products, or any other "environmental provision" (as defined in such Section 736) relating to the Property or any portion thereof; and (ii) in accordance with California Code of Civil Procedure Section 726.5, as such Section may be amended from time to time, waive the security of the Security Instrument as to any portion of the Property that is "environmentally impaired" or is an "affected parcel" (as such terms are defined in such Section), and thereafter exercise against Borrower, to the extent permitted by such Section 726.5, the rights and remedies of an unsecured creditor, including reduction of Lender's claim against Borrower to judgment, and any other rights and remedies permitted by law.

(c)    Action for Environmental Claims.  In accordance with, and subject to limitations of, California Code of Civil Procedure Section 736, Lender may seek a judgment that Borrower has breached its covenants, representations and/or warranties with respect to the environmental matters contained in the Loan Documents (the "**Environmental Provisions**"), and may commence and maintain an action or actions in any court of competent jurisdiction for enforcement of the Environmental Provisions and/or recovery of any all costs, damages, expenses, fees, penalties, fines, judgments, indemnification payments to third parties, and other out-of-pocket costs or expenses (including, without limitation, court costs, consultants' fees and attorneys' fees, whether incurred in litigation or not and whether before or after judgment), incurred or advanced by Lender pursuant to the Environmental Provisions (collectively, the "**Environmental Costs**"), excluding, however, any Environmental Costs not permitted to be recovered pursuant to Section 736 of the California Code of Civil Procedure.  Environmental Costs that are not permitted to be recovered pursuant to Section 736 may be referred to hereinafter as the "**Unsecured Environmental Costs**," and Environmental Costs other than the Unsecured Environmental Costs may be referred to hereinafter as the "**Secured Environmental Costs**."  Any Unsecured Environmental Costs shall not be secured by this Deed of Trust; however, nothing herein shall prevent Lender from recovering any Unsecured Environmental Costs pursuant to the Environmental Obligations set forth in this Security Instrument, to the

extent they are recoverable in accordance herewith. All Secured Environmental Costs incurred by Lender shall bear interest at the default rate provided in the Note. All Secured Environmental Costs together with interest thereon at the rate then in effect under the Note shall be secured by this Security Instrument and shall enjoy the same priority as the original principal amount of the Note. Borrower acknowledges and agrees that notwithstanding any term or provision contained in this Security Instrument or in the other Loan Documents, Environmental Costs shall be exceptions to any nonrecourse or exculpatory provision, if any, and Borrower shall be fully and personally liable for Environmental Costs. Such liability shall not be limited to the original principal amount of the obligations secured by this Security Instrument. Borrower's obligations hereunder shall survive foreclosure, deed in lieu of foreclosure, release, reconveyance or any other transfer of the Property or this Security Insturment. For the purposes of any action brought under this subparagraph, Borrower hereby waives the defense of laches and any applicable statute of limitations.

      3.03   <u>Continuing Lien and Security Interest</u>. In the event of a sale, by foreclosure, power of sale, or otherwise, of less than all of the Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority. To the extent that applicable laws do not permit the continuing lien of this Security Instrument for the balance of the Indebtedness not then due following the foreclosure of this Security Instrument, Borrower shall execute an amended and restated deed of trust to secure the balance of the Indebtedness. If Borrower is unwilling or unable to execute such amended and restated deed of trust, Lender may, as Borrower's attorney-in-fact executed and record such amended and restated deed of trust and may file such financing statements as Lender deems necessary to perfect its security interest thereunder.

      3.04   <u>Third Parties</u>. This Security Instrument shall constitute a direction and full authority to any lessee or other third party who has heretofore dealt or contracted or may hereafter deal or contract with Borrower or Lender, at the request of Lender, to pay all amounts owing under any Lease, contract, concession, license or other agreement to Lender without proof of the default relied upon. Any such lessee or third party is hereby irrevocably authorized to rely upon and comply with (and shall be fully protected by Borrower in so doing) any request, notice or demand by Lender for the payment to Lender of any Rents or other sums which may be or thereafter become due under its Lease, contract, concession, license or other agreement, or for the performance of any undertakings under any such lease, contract, concession, license or other agreement, and shall have no right or duty to inquire whether any default under this Security Instrument or under any of the other Loan Documents has actually occurred or is then existing. Borrower hereby constitutes and appoints Lender, its assignees, successors, transferees and nominees, as Borrower's true and lawful attorney-in-fact and agent, with full power of substitution in the Property, in Borrower's name, place and stead, to do or permit any one or more of the foregoing described rights, remedies, powers and authorities, successively or concurrently, and said power of attorney shall be deemed a power coupled with an interest and irrevocable so long as any Indebtedness is outstanding. Any money advanced by Lender in connection with any action taken under this Section, together with interest thereon at the Default Interest Rate from the date of making such advancement by Lender until actually paid by Borrower, shall be a demand obligation owing by Borrower to Lender and shall be secured by this Security Instrument and by every other Loan Document securing the Indebtedness.

NY 00058811 v1

3.05   <u>Cumulative Remedies</u>.  All remedies contained in this Security Instrument, the Loan Agreement and the other Loan Documents are cumulative, and Lender shall also have all other remedies provided at law and in equity.   Such remedies may be pursued separately, successively or concurrently at the sole subjective direction of Lender and may be exercised in any order and as often as occasion therefor shall arise.  No act of Lender shall be construed as an election to proceed under any particular provisions of this Security Instrument, the Loan Agreement or the other Loan Documents to the exclusion of any other provision or as an election of remedies to the exclusion of any other remedy which may then or thereafter be available to Lender.  No delay or failure by Lender to exercise any right or remedy under this Security Instrument, the Loan Agreement or the other Loan Documents shall be construed to be a waiver of that right or remedy or of any default hereunder.  Lender may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

3.06   <u>Payment of Expenses</u>.  Borrower shall pay on demand all of Lender's expenses reasonably incurred in any efforts to enforce any terms of this Security Instrument, the Loan Agreement or the other Loan Documents whether or not any lawsuit is filed and whether or not foreclosure is commenced but not completed, including, but not limited to, reasonable legal fees and disbursements, foreclosure costs and title charges, together with interest thereon from and after the date incurred by Lender until actually paid by Borrower at the Default Interest Rate, and the same shall be secured by this Security Instrument and by all of the other Loan Documents securing all or any part of the Indebtedness.

3.07   <u>Application of Proceeds</u>.  The proceeds from a foreclosure or other disposition of the Property shall be applied by Lender in accordance with the terms of the Note.

**ARTICLE 4**
**<u>MISCELLANEOUS TERMS AND CONDITIONS</u>**

4.01   <u>Time of Essence</u>.  Time is of the essence with respect to all provisions of this Security Instrument.

4.02   <u>Release of Security Instrument</u>.

(a)   If and when Borrower has paid all of the Indebtedness as the same becomes due and payable then, and in such event only, all rights under this Security Instrument shall terminate except for those provisions hereof which by their terms survive repayment in full of the Indebtedness, and the Property shall become wholly clear of the liens, security interests, conveyances and assignments evidenced hereby, which shall be released by Lender in due form at Borrower's cost.  Borrower shall be responsible for the recordation of such release and payment of any recordation costs associated therewith.

(b)   If less than all of the Property is at any time sold or transferred due to foreclosure, deed in lieu of foreclosure, condemnation or otherwise, or if Lender releases any portion of the Property from the lien of this Security Instrument, this Security Instrument shall remain as a lien and security interest on the remaining portion of the Property, unimpaired and without loss of priority.

NY 00058811 v1

19

4.03    Notices.  Any notice, report, demand or other instrument authorized or required to be given or furnished hereunder or as required by law shall be given in accordance with the terms of the Loan Agreement.

4.04    Successors and Assigns.    The terms, provisions, indemnities, covenants and conditions hereof shall be binding upon Borrower and the successors and assigns of Borrower, including all successors in interest in and to all or any part of the Property, and shall inure to the benefit of Lender, and its successors and assigns and shall constitute covenants running with the land.  If Borrower consists of more than one person or entity, each will be jointly and severally liable to perform the obligations of Borrower.

4.05    Lender and Trustee.    Wherever applicable, all references in this Security Instrument to Lender shall include Trustee acting for or on behalf of Lender.

4.06    Entire Agreement; Amendment; Severability.  This Security Instrument contains the entire agreement between the parties respecting the matters herein set forth and supersedes all prior agreements, whether written or oral, between the parties respecting such matters.  Any amendments or modifications hereto, in order to be effective, shall be in writing and executed by the parties hereto.    A determination that any provision of this Security Instrument is unenforceable or invalid shall not affect the enforceability or validity of any other provisions, and any determination that the application of any provision of this Security Instrument to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other persons or circumstances.

4.07    Captions for Convenience.    The captions and headings of the sections and paragraphs of this Security Instrument are for convenience of reference only and shall not be construed in interpreting the provisions hereof.

4.08    GOVERNING LAW.    THIS SECURITY INSTRUMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

4.09    Litigation Provisions.

(a)    BORROWER CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN BOSTON, MASSACHUSETTS, AND OF ANY STATE OR FEDERAL COURT LOCATED OR HAVING JURISDICTION IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED, IN WHICH ANY LEGAL PROCEEDING MAY BE COMMENCED OR PENDING RELATING IN ANY MANNER TO THIS SECURITY INSTRUMENT, THE LOAN, OR ANY OF THE OTHER LOAN DOCUMENTS.

(b)    BORROWER AGREES THAT PROCESS IN ANY LEGAL PROCEEDING RELATING TO THIS SECURITY INSTRUMENT, THE LOAN OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE SERVED ON BORROWER AT ANY LOCATION.

NY 00058811 v1

(c)     BORROWER AGREES THAT ANY LEGAL PROCEEDING RELATING TO THIS SECURITY INSTRUMENT, THE LOAN, OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE BROUGHT AGAINST BORROWER IN ANY STATE OR FEDERAL COURT LOCATED IN BOSTON, MASSACHUSETTS, OR IN ANY STATE OR FEDERAL COURT LOCATED OR HAVING JURISDICTION IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED.  BORROWER WAIVES ANY OBJECTION TO VENUE IN ANY SUCH COURT AND WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE FROM ANY SUCH COURT.

(d)     BORROWER AGREES THAT IT WILL NOT COMMENCE ANY LEGAL PROCEEDING AGAINST LENDER RELATING IN ANY MANNER TO THIS SECURITY INSTRUMENT, THE LOAN OR ANY OF THE OTHER LOAN DOCUMENTS IN ANY COURT OTHER THAN A STATE OR FEDERAL COURT LOCATED IN BOSTON, MASSACHUSETTS OR A STATE OR FEDERAL COURT LOCATED OR HAVING JURISDICTION IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED, OR IF A LEGAL PROCEEDING IS COMMENCED BY LENDER AGAINST BORROWER IN A COURT IN ANOTHER LOCATION, BY WAY OF A COUNTERCLAIM IN SUCH LEGAL PROCEEDING.

(e)     BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY LEGAL PROCEEDING RELATING TO THIS SECURITY INSTRUMENT, THE LOAN OR ANY OF THE OTHER LOAN DOCUMENTS.

4.10   <u>Counting of Days</u>.  The term "**days**" when used herein shall mean calendar days. If any time period ends on a Saturday, Sunday or holiday officially recognized by the State within which the Property is located, the period shall be deemed to end on the next succeeding business day.  The term "**business day**" or "**Business Day**" when used herein shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in New York, New York are authorized by law to be closed.

4.11   <u>Application of the Proceeds of the Note/Subrogation</u>.  To the extent that proceeds of the Note are used to pay indebtedness secured by any outstanding lien, security interest, charge or prior encumbrance against the Property, such proceeds have been advanced by Lender at Borrower's request and Lender shall be subrogated to any and all rights, security interests and liens owned by any owner or holder of such outstanding liens, security interests, charges or encumbrances, irrespective of whether said liens, security interests, charges or encumbrances are released.

4.12   <u>Unsecured Portion of Indebtedness</u>.  If any part of the Indebtedness cannot be lawfully secured by this Security Instrument or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such Indebtedness, then all payments made shall be applied on said Indebtedness first in discharge of that portion thereof which is unsecured by this Security Instrument.

4.13   <u>Construction of this Document</u>.  This document may be construed as a mortgage, security deed, deed of trust, chattel mortgage, conveyance, assignment, security agreement, pledge, financing statement, hypothecation or contract, or any one or more of the foregoing, in

NY 00058811 v1

order to fully effectuate the liens and security interests created hereby and the purposes and agreements herein set forth.

4.14   <u>No Merger</u>.  It is the desire and intention of the parties hereto that this Security Instrument and the lien hereof do not merge in fee simple title to the Property.

4.15   <u>Rights With Respect to Junior Encumbrances</u>.  Any person or entity purporting to have or to take a junior mortgage or other lien upon the Property or any interest therein shall be subject to the rights of Lender to amend, modify, increase, vary, alter or supplement this Security Instrument, the Note or any of the other Loan Documents and to extend the maturity date of the Indebtedness and to increase the amount of the Indebtedness and to waive or forebear the exercise of any of its rights and remedies hereunder or under any of the other Loan Documents and to release any collateral or security for the Indebtedness, in each and every case without obtaining the consent of the holder of such junior lien and without the lien or security interest of this Security Instrument losing its priority over the rights of any such junior lien.

4.16   <u>After-Acquired Property</u>.  All property acquired by Borrower after the date of this Security Instrument which by the terms of this Security Instrument shall be subject to the lien and the security interest created hereby, shall immediately upon the acquisition thereof by Borrower and without further deed, conveyance or assignment become subject to the lien and security interest created by this Security Instrument.

4.17   <u>Counterparts</u>.  This Security Instrument may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page.  Any signature page of this Security Instrument may be detached from any counterpart of this Security Instrument without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Security Instrument identical in form hereto but having attached to it one or more additional signature pages.

4.18   <u>Personal Liability</u>.  Notwithstanding anything to the contrary contained in this Security Instrument, the liability of Borrower for the Indebtedness and for the performance of the other agreements, covenants and obligations contained herein and in the other Loan Documents shall be limited as set forth in Section 7.18 of the Loan Agreement; provided, however, that nothing herein shall be deemed to be a waiver of any right which Lender may have under Sections 506(a), 506(b), 1111(b) or any other provisions of the Bankruptcy Act to file a claim for the full amount of the Indebtedness or to require that all collateral shall continue to secure all indebtedness owing to Lender in accordance with the Note, this Security Instrument and the other Loan Documents.

4.19   <u>Relationship of the Parties; No Third Party Beneficiary</u>.  The relationship between Borrower and Lender is that of a debtor and a creditor only and neither of those parties is, nor shall it hold itself out to be, the agent, employee, joint venturer or partner of the other party. Neither the rights granted to Lender hereunder or in the other Loan Documents or the exercise by Lender of any remedies with respect to this Security Instrument or other Loan Documents shall be construed to make Lender a "**mortgagee in possession**" of the Property absent Lender itself

NY 00058811 v1

22

taking actual possession of the Property. This Security Instrument is not intended by Borrower and Lender to confer, and shall not confer, benefits on behalf of any tenant or other occupant of the Property.

4.20    Fixture Filing. This Security Instrument constitutes a financing statement filed as a fixture filing under Article 9 of the Uniform Commercial Code in the State of California, covering property which now is or later may become fixtures attached to the Real Estate or Improvements. FOR PURPOSES OF A FIXTURE FILING, BORROWER IS THE DEBTOR AND LENDER OR TRUSTEE IS THE SECURED PARTY AND THE RESPECTIVE ADDRESSES OF BORROWER, AS DEBTOR, AND LENDER AND TRUSTEE, AS SECURED PARTIES, ARE AS SET FORTH IN THE PREAMBLE TO THIS SECURITY INSTRUMENT. THIS FINANCING STATEMENT COVERS FIXTURES AND GOODS THAT ARE OR ARE TO BECOME FIXTURES RELATED TO THE PROPERTY, AND IS TO BE FILED IN THE REAL PROPERTY RECORDS. THIS FINANCING STATEMENT IS FILED AS A FIXTURE FILING.

4.21    Rights of Tenants. The failure of Lender or Trustee to join any tenant of the Property as a defendant or defendants in any foreclosure or other proceeding to enforce Lender's rights hereunder shall not be asserted by Borrower as a defense in connection with any such proceeding.

## ARTICLE 5
## TRUSTEE PROVISIONS.

5.01    Trustee. Trustee shall be deemed to have accepted the terms of this trust when this Security Instrument, duly executed and acknowledged, is made a public record as provided by law. Trustee shall not be obligated to notify any party to this Security Instrument of any pending sale under any other deed of trust or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Property, this Security Instrument, Lender's security for the payment and performance of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Property, Borrower, or Lender.

5.02    Power of Trustee to Reconvey or Consent. At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Security Instrument to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Security Instrument, or (b) the lien of this Security Instrument on the remainder of the Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Security Instrument, (c) or any right or power of Lender or Trustee with respect to the remainder of the Property, Trustee may (i) reconvey or release any part of the Property from the lien of this Security Instrument; (ii) approve the preparation and join in the filing of any map or plat of the Property; (iii) join in the granting of any easement burdening the Property; or (iv) enter into any extension or subordination agreement affecting the Property and/or the lien of this Security Instrument.

NY 00058811 v1

23

5.03   <u>Duty to Reconvey</u>.   On Lender's written request reciting that all sums secured hereby have been paid, surrender of the Note and this Security Instrument to Trustee for cancellation and retention by Trustee, and payment by Borrower of any reconveyance fees customarily charged by Trustee, Trustee shall reconvey, without warranty, the Property then held by Trustee under this Security Instrument or otherwise execute and deliver a satisfaction instrument to evidence the cancellation of this Security Instrument. The recitals in such reconveyance of any matters of fact shall be conclusive proof of their truthfulness. The grantee in such reconveyance may be described as "the person or persons legally entitled to the Property." Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Security Instrument. Upon any such reconveyance, Trustee and Lender shall, automatically and without the need for any further documentation, be absolutely and unconditionally released from any and all claims or liabilities in connection with the Loan. In addition, Borrower hereby indemnifies and agrees to hold Trustee and Lender harmless from and against any and all claims and liabilities arising out of the release hereof, such indemnification to survive any such satisfaction or assignment.

5.04   <u>Substitution of Trustee</u>.   If Lender shall for any reason desire to remove Trustee or any of its successors as Trustee hereunder, and to appoint a successor Trustee in the existing Trustee's place or stead, Lender shall have and is hereby granted full power and authority to remove the existing Trustee and to appoint the existing Trustee's successor by instrument in writing, duly acknowledged or proved so as to entitle the same to record and such successor Trustee shall thereupon become successor to the title to the Property and the same shall become vested in the successor Trustee in trust for the purposes and objects of these presents, with all the power, duties, and obligations herein conferred on the existing Trustee, in the same manner and to the same effect as though such successor Trustee were named herein as Trustee.

5.05   <u>Certain Rights</u>.   With the approval of Lender, Trustee shall have the right to take any and all of the following actions: (a) to select, employ and consult with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution and interpretation of the Loan Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (b) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his or her agents or attorneys, (c) to select and employ, in and about the execution of his or her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee (and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence or bad faith), and (d) any and all other lawful action that Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property. Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine. Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services

hereunder as shall be rendered.  Borrower will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save and hold Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

5.06    Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, and shall be segregated from any other moneys of Trustee.

5.07    Perfection of Appointment.  Should any deed, conveyance, or instrument of any nature be required from Borrower by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and shall be caused to be recorded and/or filed by Borrower.

5.08    No Representation by Trustee or Lender.  By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

## ARTICLE 6
## STATE PROVISIONS

6.01    Inconsistencies.    Notwithstanding any of the foregoing to the contrary, the provisions contained in this Article 6 shall govern the rights of the parties to this Security Instrument.

6.02    Insurance and Condemnation Proceeds.    In the event of any casualty or condemnation of the Property, the provisions of Section 2.07 of the Loan Agreement.  Any implied covenant in this Security Instrument restricting the right of Lender to make an election as to the application of proceeds is waived by Borrower.  In addition, Borrower hereby waives the provisions of any law prohibiting Lender from making such an election including, without limitation, the provisions of California Code of Civil Procedure commencing with Section 1265.210.

6.03    Waiver of Lien.  In accordance with California Code of Civil Procedure Section 726.5, Lender may waive its lien against the Property or any portion thereof, together with fixtures or personal property thereon, to the extent such property is found to be environmentally impaired, and may exercise any and all rights and remedies of an unsecured creditor against Borrower and all of Borrower's assets and property for the recovery of any deficiency, including, without limitation, seeking an attachment order under California Code of Civil Procedure Section 483.010.  No such waiver shall be final or binding on Lender unless and until a final

NY 00058811 v1

25

money judgment is obtained against Borrower. As between Lender and Borrower, for purposes of California Code of Civil Procedure Section 726.5, Borrower shall have the burden of proving that the release or threatened release of any Hazardous Material was not knowingly or negligently caused or contributed to, or knowingly or willfully permitted or acquiesced to by Borrower or any related party (or any affiliate or agent of Borrower or any related party) and that Borrower made written disclosure of the release to Lender or that Lender otherwise obtained actual knowledge thereof prior to the making of the Loan. Borrower's obligations hereunder shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance or any other transfer of the Property or this Security Instrument. For the purpose of any action brought under this Section, Borrower hereby waives the defense of laches and any applicable statute of limitations. For purposes of California Code of Civil Procedure 726.5, the acts, knowledge and notice of each "726.5 Party" shall be attributed to and be deemed to have been performed by the party or parties then obligated on and liable for payment of the Note. As used herein, "726.5 Party" shall mean Borrower, any successor owner to Borrower of all or any portion of the Property, any related party of Borrower or any such successor and any affiliate or agent of Borrower, any such successor or any such related party.

6.04    <u>Lender's Lien for Service Charge and Expenses</u>. At all times, regardless of whether any Loan proceeds have been disbursed, this Security Instrument secures (in addition to any Loan proceeds disbursed from time to time) the payment of any and all loan commissions, service charges, liquidated damages, expenses and advances due to or incurred by Lender not to exceed the maximum amount secured hereby.

6.05    <u>Delivery of Recorded Security Instrument</u>. If California Civil Code Section 3110.5 is applicable to Borrower in connection with the Loan, as soon as practicable following recordation of this Security Instrument, Borrower shall deliver to any general contractor a copy of the recorded Security Instrument, certified by the county recorder, and shall otherwise fully comply with said Section 3110.5.

[SIGNATURE PAGE FOLLOWS]

NY 00058811 v1

**EXHIBIT A**
**Page 140**

IN WITNESS WHEREOF, Borrower, intending to be legally bound hereby, has duly executed this Security Instrument as of the day and year first above written.

<u>**BORROWER**</u>:

**POWAY PROPERTY LP**, a Delaware limited partnership

By:    Capexco US GP Inc., its general partner

By:    _____
Name:    <u>TRENT CLAUGHTON</u>
Title:    <u>President</u>

PROVINCE OF ALBERTA          )
                              )    ss.
COUNTRY OF CANADA            )

On October 20, 2020, before me, <u>ROBERT HALL</u>, Judge, Alberta, Canada, personally appeared TRENT CLAUGHTON, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

_____
ROBERT HALL
JUSTICE OF THE COURT OF QUEEN'S BENCH
OF ALBERTA
[SEAL]                          CANADA          Justice R. J. Hall

[signature page to Poway Outpost Deed of Trust]

**EXHIBIT A**
**Page 140**

## EXHIBIT A

## LEGAL DESCRIPTION

The land referred to is situated in the County of San Diego, City of Poway, State of California, and is described as follows:

PARCEL 1:

THE EASTERLY 249.50 FEET OF THE NORTHERLY 320.00 FEET OF THE WEST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 13, TOWNSHIP 14 SOUTH, RANGE 2 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF POWAY, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO UNITED STATES GOVERNMENT SURVEY.

PARCEL 2:

AN EASEMENT FOR INGRESS AND EGRESS FOR ROAD AND PUBLIC UTILITY PURPOSES OVER, UNDER, ALONG AND ACROSS THE SOUTHERLY 40.00 FEET OF THE NORTHERLY 360.00 FEET OF THE WEST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 13, TOWNSHIP 14 SOUTH, RANGE 2 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO UNITED STATES GOVERNMENT SURVEY.

EXCEPTING THEREFROM THE EASTERLY 70.00 FEET.

APN: 317-473-20

NY 00058811 v1

A-1

# EXHIBIT 4

Poway Outpost
Loan Number: 62041

## INDEMNITY AND GUARANTY AGREEMENT

**THIS INDEMNITY AND GUARANTY AGREEMENT** (this "**Agreement**") is made as of October 22, 2020 by **DAVID HALL**, an individual having an address of 30254 River Ridge Drive, Calgary AB  T3Z 3L1, **TRENT CLAUGHTON**, an individual having an address of 609 Sifton Blvd SW, Calgary AB T2T 2K8, **MARCO DEDOMINICIS**, an individual having an address of 41224 Circle 5 Estates, Calgary AB T3Z 2T5, and **DENNY CHOW**, an individual having an address of 240 Arbour Glen Close NW, Calgary AB T3G 3Y6 (whether one or more, "**Indemnitor**"), jointly and severally, in favor of **UC FUNDING, LLC**, a Delaware limited liability company having an address c/o UC Credit Services LLC, 745 Boylston Street, Suite 502, Boston, Massachusetts 02116 (together with its successors and assigns, "**Lender**").

RECITALS:

A.    Lender has extended a loan to Poway Property LP, a Delaware limited partnership ("**Borrower**"), in the original principal amount of TWENTY-ONE MILLION ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($21,100,000.00) (the "**Loan**").

B.    The Loan is evidenced by (i) a Loan Agreement of even date herewith between Borrower and Lender (the "**Loan Agreement**"), and (ii) a Promissory Note of even date herewith executed by Borrower and payable to the order of Lender in the amount of the Loan  (the "**Note**"), which Note is secured by, among other things, a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing of even date herewith (the "**Security Instrument**") from Borrower to Lender, encumbering that certain real property described on **Exhibit A** attached hereto and made a part hereof, together with the buildings, structures and other improvements now or hereafter located thereon (collectively, the "**Property**").  This Agreement, the Loan Agreement, the Note, the Security Instrument and all other documents and instruments evidencing and/or securing the Loan, as the same may from time to time be amended, consolidated, renewed or replaced, are collectively referred to herein as the "**Loan Documents**".  Any capitalized terms used, but not defined herein, shall have the meanings set forth in the Note and/or Loan Agreement.

C.    As a condition to making the Loan, Lender has required that Indemnitor indemnify Lender from and against and guarantee payment to Lender of those items for which Borrower is personally liable and for which Lender has recourse against Borrower under the terms of the Note, the Loan Agreement, and the other Loan Documents.

D.    Indemnitor is an owner of a direct or indirect beneficial interest in Borrower, and the extension of the Loan to Borrower is of substantial benefit to Indemnitor.   Therefore, Indemnitor desires to indemnify Lender from and against and guarantee payment to Lender of those items for which Borrower is personally liable and for which Lender has recourse against Borrower under the terms of the Note, the Loan Agreement, and the other Loan Documents.

NOW, THEREFORE, to induce Lender to extend the Loan to Borrower and in consideration of the foregoing premises and for other good and valuable consideration, the receipt

and sufficiency of which are hereby acknowledged, Indemnitor hereby covenants and agrees for the benefit of Lender as follows:

**ARTICLE 1**
**INDEMNITY AND GUARANTY**

    1.01    Indemnity and Guaranty.

        (a)    Indemnitor hereby assumes liability for, hereby guarantees payment to Lender of, hereby agrees to pay, protect, defend and save Lender harmless from and against, and hereby indemnifies Lender from and against any and all liabilities, obligations, losses, damages, costs and expenses (including, without limitation, attorneys' fees at both the trial and appellate levels), causes of action, suits, claims, demands and judgments of any nature or description whatsoever (collectively, "**Costs**") which may at any time be imposed upon, incurred by or awarded against Lender as a result of:

        (i)    fraud or material misrepresentation or failure to disclose a material fact by Borrower or Indemnitor, or any of their respective officers, agents, attorneys, principals, general partners, managing members or employees, or any guarantor or indemnitor in connection with the Loan including, without limitation, the origination of the Loan and the performance of Borrower's and Indemnitor's obligations under the Loan Documents;

        (ii)    the gross negligence or willful misconduct of Borrower;

        (iii)    the physical waste of all or any material portion of the Property;

        (iv)    the breach of any representation, warranty, covenant or indemnification provision contained in the Loan Documents concerning environmental laws, hazardous substances or asbestos including, without limitation, Section 2.22 of the Loan Agreement;

        (v)    the removal or disposal of all or any portion of the Property which is not immediately replaced with items of like kind, value and use;

        (vi)    the misapplication, misappropriation or conversion by Borrower of (A) any insurance proceeds paid by reason of any loss, damage or destruction to the Property, (B) any awards or other amounts received in connection with the condemnation of all or a portion of the Property, (C) any Rents and Profits following an Event of Default, or (D) any Rents and Profits paid more than one (1) month in advance or any lease termination fee or payment;

        (vii)    the failure to pay, or cause to be paid, taxes and assessments affecting the Property (including, without limitation, assessments related to the PACE Financing) (except to the extent that there are sufficient funds available on deposit in the Impound Reserve to pay such taxes and assessments and (x) Lender's access to such funds is not restricted by applicable law, injunction, or other court order or restricted as a result of any action, inaction or omission by Borrower or any guarantor or indemnitor, and (y) no Event of Default has occurred and is continuing), or charges for labor or materials or other charges that can create liens on any portion of the Property;

(viii)   any and all tenant security deposits held by Borrower not being properly applied, returned to tenants when due, or delivered to Lender;

(ix)   the failure to obtain and maintain fully paid insurance in accordance with Section 2.02 of the Loan Agreement, including the failure to pay the insurance premium on any or all required insurance;

(x)   the failure to provide financial statements and other data in accordance with Section 2.15 of the Loan Agreement;

(xi)   the failure to provide Interest Reserve payments in accordance with Section 2.05(d) and Schedule V of the Loan Agreement;

(xii)   the failure to pay any fees for the transfer of franchises, licenses, permits or other agreements which Lender is required to pay as a prerequisite to the exercise of its rights under the Assignment of Contracts, Permits, Licenses, Agreements and Other Rights executed by Borrower of even date herewith;

(xiii)   any matters for which Lender is indemnified by Borrower pursuant to Section 7.23 of the Loan Agreement;

(xiv)   the failure by Borrower to comply with its obligations under Article VI of the Loan Agreement including, without limitation, the opening of a Clearing Account, the execution and delivery of a Control Agreement, and the deposit of all Rents and Profits from the Property into the Clearing Account;

(xv)   Borrower fails to maintain its status as a single purpose entity as required by, and in accordance with, Section 2.24 of the Loan Agreement;

(xvi)   any costs and expenses incurred by Lender in connection with the collection of any amount for which Borrower is personally liable under the Loan Agreement, including attorney's fees and costs and the costs of conducting any independent audit of Borrower's books and records to determine the amount for which Borrower has personal liability thereunder; and

(xvii)   Borrower failure to pay the Deferred Fees to the City of Poway in accordance with Section 2.05(f) of the Loan Agreement.

(b)   Notwithstanding anything to the contrary in any of the Loan Documents, (i) Lender shall not be deemed to have waived any right which Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Obligations or to require that all collateral shall continue to secure all of the Obligations in accordance with the Loan Documents, and (ii) Indemnitor shall be liable for the full amount of the Obligations in the event that (A) the first full monthly payment of principal and/or interest under the Note is not paid when due; (B) Borrower fails to maintain its status as a single purpose entity as required by, and in accordance with, Section 2.24 of the Loan Agreement; (C) Borrower fails to obtain Lender's prior written consent to any subordinate financing or other voluntary lien encumbering the Property; (D) there is a breach of  Section 2.10 of the Loan

Agreement; (E) Borrower or Indemnitor consents to, or acquiesces in, or joins in, an application for the appointment of a receiver, liquidator or trustee for Borrower or any portion of the Property, or if Borrower or Indemnitor are voluntarily adjudicated insolvent or bankrupt, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by, consented to, or acquiesced in by, Borrower or Indemnitor or if any proceeding for the dissolution or liquidation of Borrower or Indemnitor shall be instituted by Borrower or Indemnitor; or (F) Borrower, Indemnitor (or any person composing Indemnitor), or any party holding a direct or indirect interest in Borrower or Indemnitor shall, in connection with any enforcement action or exercise or assertion of any right or remedy by or on behalf of Lender under or in connection with this Agreement, the Note, the Loan Agreement, the Security Instrument or any of the other Loan Documents, asserts a defense, seeks judicial intervention or injunctive or other equitable relief of any kind or asserts in a pleading filed in connection with a judicial proceeding any defense against Lender or any right in connection with any security for the Loan which the court (or appellate court, if applicable) in such action or proceeding determines is without merit (in respect of a defense) or unwarranted (in respect of a request for judicial intervention or injunctive or other equitable relief).

1.02    Nature of Guaranty.   This is a guaranty of payment and performance and not of collection.   The liability of Indemnitor under this Agreement shall be absolute, direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person (including, without limitation, other indemnitors, if any), nor against the collateral for the Loan.  Indemnitor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any collateral for the Loan or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event, on account of the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, Borrower shall be relieved of or fail to incur any debt, obligation or liability as provided in the Loan Documents, Indemnitor shall nevertheless be fully liable therefor.  Upon the occurrence of an Event of Default, as defined in the Loan Agreement, Lender shall have the right to enforce its rights, powers and remedies (including, without limitation, foreclosure of all or any portion of the collateral for the Loan) thereunder or hereunder, in any order, and all rights, powers and remedies available to Lender in such event shall be non-exclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder or by law or in equity.  If the indebtedness and obligations guaranteed hereby are partially paid or discharged by reason of the exercise of any of the remedies available to Lender, this Agreement shall nevertheless remain in full force and effect, and, subject to the terms hereof, Indemnitor shall remain liable for all remaining indebtedness and obligations guaranteed hereby, even though any rights which Indemnitor may have against Borrower may be destroyed or diminished by the exercise of any such remedy.

**ARTICLE 2**
**INDEMNIFICATION PROCEDURES/REINSTATEMENT/WAIVERS**

2.01    Indemnification Procedures.

(a)    If any action shall be brought against Lender based upon any of the matters for which Lender is indemnified hereunder, Lender shall notify Indemnitor in writing and

Indemnitor shall promptly assume the defense thereof; including, without limitation, the employment of counsel acceptable to Lender and the negotiation of any settlement; provided, however, that any failure of Lender to notify Indemnitor of such matter shall not impair or reduce the obligations of Indemnitor hereunder. Lender shall have the right, at the expense of Indemnitor (which expense shall be included in Costs), to employ separate counsel in any such action and to participate in the defense thereof. In the event Indemnitor shall fail to discharge or undertake to defend Lender against any claim, loss or liability for which Lender is indemnified hereunder, Lender may, at its sole option and election, defend or settle such claim, loss or liability. The liability of Indemnitor to Lender hereunder shall be conclusively established by such settlement, provided such settlement is made in good faith, the amount of such liability to include both the settlement consideration and the costs and expenses including, without limitation, attorneys' fees and disbursements (at both the trial and appellate levels) incurred by Lender in effecting such settlement. In such event, such settlement consideration, costs and expenses shall be included in Costs and Indemnitor shall pay the same as hereinafter provided. Lender's good faith in any such settlement shall be conclusively established if the settlement is made on the advice of independent legal counsel for Lender.

(b)     Indemnitor shall not, without the prior written consent of Lender: (i) settle or compromise any action, suit, proceeding or claim or consent to the entry of any judgment that does not include as an unconditional term thereof the delivery by the claimant or plaintiff to Lender of a full and complete written release of Lender (in form, scope and substance satisfactory to Lender in its sole discretion) from all liability in respect of such action, suit, proceeding or claim and a dismissal with prejudice of such action, suit, proceeding or claim; or (ii) settle or compromise any action, suit, proceeding or claim in any manner that may adversely affect Lender or obligate Lender to pay any sum or perform any obligation as determined by Lender in its sole discretion.

(c)     All Costs shall be immediately reimbursable to Lender when and as incurred and, in the event of any litigation, claim or other proceeding, without any requirement of waiting for the ultimate outcome of such litigation, claim or other proceeding, and Indemnitor shall pay to Lender any and all Costs within twenty (20) days after written notice from Lender itemizing the amounts thereof incurred to the date of such notice. In addition to any other remedy available for the failure of Indemnitor to periodically pay such Costs, such Costs, if not paid within said ten-day period, shall bear interest at the Default Interest Rate (as defined in the Note).

2.02    Reinstatement of Obligations. If at any time all or any part of any payment made by Indemnitor or received by Lender from Indemnitor under or with respect to this Agreement is or must be rescinded or returned for any reason whatsoever (including, but not limited to, the insolvency, bankruptcy or reorganization of Indemnitor or Borrower), then the obligations of Indemnitor hereunder shall, to the extent of the payment rescinded or returned, be deemed to have continued in existence, notwithstanding such previous payment made by Indemnitor, or receipt of payment by Lender, and the obligations of Indemnitor hereunder shall continue to be effective or be reinstated, as the case may be, as to such payment, all as though such previous payment by Indemnitor had never been made.

2.03    Waivers by Indemnitor. To the extent permitted by law, Indemnitor hereby waives and agrees not to assert or take advantage of:

(a)     Any right to require Lender to proceed against Borrower or any other person or to proceed against or exhaust any security held by Lender at any time or to pursue any other remedy in Lender's power or under any other agreement before proceeding against Indemnitor hereunder;

(b)     The defense of the statute of limitations in any action hereunder;

(c)     Any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other person or persons or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons;

(d)     Demand, presentment for payment, notice of nonpayment, protest, notice of protest and all other notices of any kind, or the lack of any thereof; including, without limiting the generality of the foregoing, notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of Borrower, Lender, any endorser or creditor of Borrower or of Indemnitor, or any other person whomsoever under this or any other instrument in connection with any obligation or evidence of indebtedness held by Lender;

(e)     Any defense based upon an election of remedies by Lender;

(f)     Any right or claim of right to cause a marshaling of the assets of Indemnitor;

(g)     Any principle or provision of law, statutory or otherwise, which is or might be in conflict with the terms and provisions of this Agreement;

(h)     Any duty on the part of Lender to disclose to Indemnitor any facts Lender may now or hereafter know about Borrower or the Property, regardless of whether Lender has reason to believe that any such facts materially increase the risk beyond that which Indemnitor intends to assume or has reason to believe that such facts are unknown to Indemnitor or has a reasonable opportunity to communicate such facts to Indemnitor, it being understood and agreed that Indemnitor is fully responsible for being and keeping informed of the financial condition of Borrower, of the condition of the Property and of any and all circumstances bearing on the risk that liability may be incurred by Indemnitor hereunder;

(i)     Any lack of notice of disposition or of manner of disposition of any collateral for the Loan;

(j)     Any invalidity, irregularity or unenforceability, in whole or in part, of any one or more of the Loan Documents;

(k)     Any lack of commercial reasonableness in dealing with the collateral for the Loan;

(l)     Any deficiencies in the collateral for the Loan or any deficiency in the ability of Lender to collect or to obtain performance from any persons or entities now or hereafter liable for the payment and performance of any obligation hereby guaranteed;

NY 00058780 v2

6

      (m)     An assertion or claim that the automatic stay provided by 11 U.S.C. §362 (arising upon the voluntary or involuntary bankruptcy proceeding of Borrower) or any other stay provided under any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any of its rights, whether now or hereafter acquired, which Lender may have against Indemnitor or the collateral for the Loan;

      (n)     Any modifications of the Loan Documents or any obligation of Borrower relating to the Loan by operation of law or by action of any court, whether pursuant to the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, or otherwise; and

      (o)     Any action, occurrence, event or matter consented to by Indemnitor under Section 4.08 hereof, under any other provision hereof, or otherwise.

## ARTICLE 3
## REPRESENTATIONS

      3.01    <u>No Contravention</u>.  The execution, delivery and performance by Indemnitor of this Agreement does not and will not (a) violate any provision of any Law, order, writ, judgment, injunction, decree, determination, or award presently in effect applicable to Indemnitor, (b) result in a breach of, or constitute a default under, any indenture or loan or credit agreement or any other agreement, lease, or instrument to which Indemnitor is a party or by which Indemnitor or Indemnitor's properties may be bound or affected, or (c) result in, or require, the creation or imposition of any lien upon or with respect to any of the properties now owned or hereafter acquired by Indemnitor.

      3.02    <u>Governmental Authority</u>.  No authorization, approval or other action by, and no notice to or filing with, any Governmental Authority is required for the due execution, delivery and performance by Indemnitor of this Agreement.

      3.03    <u>Legally Enforceable Agreement</u>.  This Agreement is the legal, valid and binding obligation of Indemnitor, enforceable against Indemnitor in accordance with its terms, except to the extent that such enforcement may be limited by (a) applicable bankruptcy, insolvency, and other similar laws affecting creditors' rights generally, or (b) general equitable principles, regardless of whether the issue of enforceability is considered in a proceeding in equity or at law.

      3.04    <u>Solvency</u>.  Indemnitor is solvent and will not be rendered insolvent by the transactions contemplated by this Agreement.

      3.05    <u>Financial Statements</u>.  The financial statements of and other financial information related to Indemnitor that were delivered to Lender, are true, correct and complete in all material respects.  Such financial statements fairly present the financial position of Indemnitor.  No Material Adverse Change has occurred since the date of such financial statements.

7

3.06    <u>Disclosure</u>.  None of Indemnitor's representations or warranties contained in this Agreement or any other document, certificate or written statement furnished to Lender by or on behalf of Indemnitor contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained in this Agreement or in such other document, certificate or written statement not misleading.  There is no fact known to Indemnitor which could result in a Material Adverse Change which has not been disclosed in writing to Lender by Indemnitor.

**ARTICLE 4**
**<u>MISCELLANEOUS PROVISIONS</u>**

4.01    <u>Fully Recourse</u>.  Indemnitor's obligations under this Agreement are recourse obligations and are not restricted by any limitations on personal liability contained in the Loan Documents.

4.02    <u>Unsecured Obligations</u>.  Indemnitor hereby acknowledges that Lender's appraisal of the Property is such that Lender is not willing to accept the consequences of the inclusion of Indemnitor's indemnity and guaranty set forth herein among the obligations secured by the Security Instrument and the other Loan Documents and that Lender would not make the Loan but for the unsecured personal liability undertaken by Indemnitor herein.

4.03    <u>Survival</u>.  This Agreement shall be deemed to be continuing in nature and shall remain in full force and effect and shall survive the payment of the indebtedness evidenced and secured by the Loan Documents and the exercise of any remedy by Lender under the Security Instrument or any of the other Loan Documents; including, without limitation, any foreclosure or deed in lieu thereof, even if, as a part of such remedy, the Loan is paid or satisfied in full.

4.04    <u>No Subrogation; No Recourse Against Lender</u>.  Notwithstanding the satisfaction by Indemnitor of any liability hereunder, Indemnitor shall not have any right of subrogation, contribution, reimbursement or indemnity whatsoever or any right of recourse to or with respect to the assets or property of Borrower or to any collateral for the Loan, until the Obligations to Lender are fully satisfied.  In connection with the foregoing, Indemnitor expressly waives any and all rights of subrogation to Lender against Borrower, and Indemnitor hereby waives any rights to enforce any remedy which Lender may have against Borrower and any right to participate in any collateral for the Loan.  In addition to and without in any way limiting the foregoing, Indemnitor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to Indemnitor to all indebtedness of Borrower to Lender, and agrees with Lender that Indemnitor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Indemnitor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the collateral from the Loan.  Further, Indemnitor shall not have any right of recourse against Lender by reason of any action Lender may take or omit to take under the provisions of this Agreement or under the provisions of any of the Loan Documents.

4.05    <u>Reservation of Rights</u>. Nothing contained in this Agreement shall prevent or in any way diminish or interfere with any rights or remedies including, without limitation, the right to contribution, which Lender may have against Borrower, Indemnitor or any other party under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (codified at

Title 42 U.S.C. §9601 et seq.), as it may be amended from time to time, or any other applicable federal, state or local laws, all such rights being hereby expressly reserved.

4.06    Financial Statements.  Indemnitor hereby agrees to furnish to Lender, as reasonably requested by Lender, current and dated financial statements, certified by or on behalf of Indemnitor, detailing the assets and liabilities of Indemnitor, in form and substance acceptable to Lender. Indemnitor hereby warrants and represents unto Lender that any and all balance sheets, net worth statements and other financial data which have heretofore been given or may hereafter be given to Lender with respect to Indemnitor did or will at the time of such delivery fairly and accurately present the financial condition of Indemnitor.

4.07    Rights Cumulative; Payments.  Lender's rights under this Agreement shall be in addition to all rights of Lender under the Note, the Loan Agreement, the Security Instrument and the other Loan Documents. FURTHER, PAYMENTS MADE BY INDEMNITOR UNDER THIS AGREEMENT SHALL NOT REDUCE IN ANY RESPECT BORROWER'S OBLIGATIONS AND LIABILITIES UNDER THE NOTE, THE LOAN AGREEMENT, THE SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS, EXCEPT TO THE EXTENT THAT ANY SUCH PAYMENT MADE BY INDEMNITOR IS MADE IN SATISFACTION OF A SPECIFIC PAYMENT OBLIGATION OF BORROWER.

4.08    No Limitation on Liability.  Indemnitor hereby consents and agrees that Lender may at any time and from time to time without further consent from Indemnitor do any of the following events, and the liability of Indemnitor under this Agreement shall be unconditional and absolute and shall in no way be impaired or limited by any of the following events, whether occurring with or without notice to Indemnitor or with or without consideration: (a) any extensions of time for performance required by any of the Loan Documents or extension or renewal of the Note; (b) any sale, assignment or foreclosure of the Note, the Security Instrument or any of the other Loan Documents or any sale or transfer of the Property; (c) any change in the composition of Borrower; including, without limitation, the withdrawal or removal of Indemnitor from any current or future position of ownership, management or control of Borrower; (d) the accuracy or inaccuracy of the representations and warranties made by Indemnitor herein or by Borrower in any of the Loan Documents; (e) the release of Borrower or of any other person or entity from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act or otherwise; (f) the release or substitution in whole or in part of any security for the Loan; (g) Lender's failure to record the Security Instrument or to file any financing statement (or Lender's improper recording or filing thereof) or to otherwise perfect, protect, secure or insure any lien or security interest given as security for the Loan; (h) the modification of the terms of any one or more of the Loan Documents; or (i) the taking or failure to take any action of any type whatsoever.  No such action which Lender shall take or fail to take in connection with the Loan Documents or any collateral for the Loan, nor any course of dealing with Borrower or any other person, shall limit, impair or release Indemnitor's obligations hereunder, affect this Agreement in any way or afford Indemnitor any recourse against Lender.  Nothing contained in this Section shall be construed to require Lender to take or refrain from taking any action referred to herein.

4.09    Entire Agreement; Amendment; Severability.  This Agreement contains the entire agreement between the parties respecting the matters herein set forth and supersedes all prior

agreements, whether written or oral, between the parties respecting such matters. Any amendments or modifications hereto, in order to be effective, shall be in writing and executed by the parties hereto. A determination that any provision of this Agreement is unenforceable or invalid shall not affect the enforceability or validity of any other provisions, and any determination that the application of any provision of this Agreement to any entity, person or circumstance is invalid, illegal or unenforceable to any extent shall not affect the enforceability or validity of such provision as it may apply to any other entity, persons or circumstances.

4.10    Governing Law; Binding Effect; Waiver of Acceptance. This Agreement shall be governed by and construed in accordance with the laws of the state in which the Property is located, except to the extent that the applicability of any of such laws may now or hereafter be preempted by Federal law, in which case such Federal law shall so govern and be controlling. This Agreement shall bind Indemnitor and the heirs, personal representatives, successors and assigns of Indemnitor and shall inure to the benefit of Lender and the officers, directors, shareholders, agents and employees of Lender and their respective heirs, successors and assigns. Notwithstanding the foregoing, Indemnitor shall not assign any of its rights or obligations under this Agreement without the prior written consent of Lender, which consent may be withheld by Lender in its sole discretion. Indemnitor hereby waives any acceptance of this Agreement by Lender, and this Agreement shall immediately be binding upon Indemnitor.

4.11    Notice. All notices, demands, requests or other communications to be sent by one party to the other hereunder or required by law shall be given and become effective as provided in the Loan Agreement.

4.12    No Waiver; Time of Essence; Business Day.    The failure of any party hereto to enforce any right or remedy hereunder, or to promptly enforce any such right or remedy, shall not constitute a waiver thereof nor give rise to any estoppel against such party nor excuse any of the parties hereto from their respective obligations hereunder. Any waiver of such right or remedy must be in writing and signed by the party to be bound. This Agreement is subject to enforcement at law or in equity, including actions for damages or specific performance. Time is of the essence hereof. The term "**business day**" as used herein shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in San Diego, California are authorized by law to be closed.

4.13    Captions for Convenience. The captions and headings of the sections and paragraphs of this Agreement are for convenience of reference only and shall not be construed in interpreting the provisions hereof.

4.14    Attorneys' Fees. In the event it is necessary for Lender to retain the services of an attorney or any other consultants in order to enforce this Agreement, or any portion thereof, Indemnitor agrees to pay to Lender any and all costs and expenses; including, without limitation, attorneys' fees (at both the trial and appellate levels), incurred by Lender as a result thereof and such costs, fees and expenses shall be included in Costs.

4.15    Successive Actions. A separate right of action hereunder shall arise each time Lender acquires knowledge of any matter indemnified or guaranteed by Indemnitor under this Agreement. Separate and successive actions may be brought hereunder to enforce any of the

10

provisions hereof at any time and from time to time. No action hereunder shall preclude any subsequent action, and Indemnitor hereby waives and covenants not to assert any defense in the nature of splitting of causes of action or merger of judgments.

4.16   _Joint and Several Liability_.  Notwithstanding anything to the contrary contained herein, if Indemnitor comprises more than one party, the representations, warranties, covenants and agreements made by each Indemnitor herein, and the liabilities of each Indemnitor hereunder, are joint and several.  Where the context so requires, words used in the singular shall include the plural and vice versa, and words of one gender shall include all other genders.

4.17   _Reliance_.  Lender would not make the Loan to Borrower without this Agreement. Accordingly, Indemnitor intentionally and unconditionally enters into the covenants and agreements as set forth above and understands that, in reliance upon and in consideration of such covenants and agreements, the Loan shall be made and, as part and parcel thereof, specific monetary and other obligations have been, are being and shall be entered into which would not be made or entered into but for such reliance.

4.18   _Counterparts_.  This Agreement may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page.  Any signature page of this Agreement may be detached from any counterpart of this Agreement without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Agreement identical in form hereto but having attached to it one or more additional signature pages.

4.19   _Waivers by Indemnitor_.

(a)   Indemnitor covenants and agrees that, upon the commencement of a voluntary or involuntary bankruptcy proceeding by or against Borrower or any other indemnitor, Indemnitor shall not seek or cause Borrower or any other person or entity to seek a supplemental stay or other relief, whether injunctive or otherwise, pursuant to 11 U.S.C. §105 or any other provision of the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law, or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights of Lender against Indemnitor or the collateral for the Loan by virtue of this Agreement or otherwise.

(b)   Indemnitor covenants and agrees that it shall not solicit or aid the solicitation of the filing of any Petition (as defined in the Loan Agreement) against Borrower, whether acting on its own behalf or on behalf of any other party, including, without limitation, (i) providing information regarding the identity of creditors or the nature of creditors' claims to any third party unless compelled to do so by order of a court of competent jurisdiction or by regulation promulgated by a governmental agency; or (ii) paying the legal fees or expenses of any creditor of or interest holder in Borrower with respect to any matter whatsoever.

4.20 <u>Litigation Provisions</u>.

(a) **INDEMNITOR CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED OR HAVING JURISDICTION IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED, IN WHICH ANY LEGAL PROCEEDING MAY BE COMMENCED OR PENDING RELATING IN ANY MANNER TO THIS AGREEMENT, THE LOAN, OR ANY OF THE OTHER LOAN DOCUMENTS.**

(b) **INDEMNITOR AGREES THAT PROCESS IN ANY LEGAL PROCEEDING RELATING TO THIS AGREEMENT, THE LOAN OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE SERVED ON INDEMNITOR AT ANY LOCATION.**

(c) **INDEMNITOR AGREES THAT ANY LEGAL PROCEEDING RELATING TO THIS AGREEMENT, THE LOAN, OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE BROUGHT AGAINST INDEMNITOR IN ANY STATE OR FEDERAL COURT LOCATED OR HAVING JURISDICTION IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED. INDEMNITOR WAIVES ANY OBJECTION TO VENUE IN ANY SUCH COURT AND WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE FROM ANY SUCH COURT.**

(d) **INDEMNITOR AGREES THAT IT WILL NOT COMMENCE ANY LEGAL PROCEEDING AGAINST LENDER RELATING IN ANY MANNER TO THIS AGREEMENT, THE LOAN OR ANY OF THE OTHER LOAN DOCUMENTS IN ANY COURT OTHER THAN A STATE OR FEDERAL COURT LOCATED IN BOSTON, MASSACHUSETTS, OR IF A LEGAL PROCEEDING IS COMMENCED BY LENDER AGAINST INDEMNITOR IN A COURT IN ANOTHER LOCATION, BY WAY OF A COUNTERCLAIM IN SUCH LEGAL PROCEEDING.**

(e) **INDEMNITOR HEREBY WAIVES TRIAL BY JURY IN ANY LEGAL PROCEEDING RELATING TO THIS AGREEMENT, THE LOAN OR ANY OF THE OTHER LOAN DOCUMENTS.**

4.21 <u>Net Worth Covenant</u>. At all times until the Loan and the obligations hereunder have been fully satisfied, Indemnitor will maintain a tangible net worth, exclusive of any direct or indirect interest in the Property, of at least $30,000,000.00. For purposes of this Agreement, "**tangible net worth**" means, as of a given date, Indemnitor's equity calculated in conformance with GAAP by subtracting total liabilities from total tangible assets.

4.22 <u>Liquidity Covenant</u>. At all times until the Loan and the obligations hereunder have been fully satisfied, Indemnitor will maintain liquid assets having an aggregate value of at least $1,000,000.00. For purposes of this Agreement, "liquid assets" means cash and unencumbered, marketable securities.

4.23    <u>Residence/Community Property Provisions</u>.

(a)    David Hall represents and warrants that his providence of residence is Alberta, Canada.

(b)    Trent Claughton represents and warrants that his providence of residence is Alberta, Canada.

(c)    Marco DeDeominicis represents and warrants that his providence of residence is Alberta, Canada.

(d)    Denny Chow represents and warrants that his providence of residence is Alberta, Canada.

4.24    <u>Additional Waivers</u>. Without limiting the generality, scope or meaning of any other provision of this Agreement:

(a)    Indemnitor hereby waives any and all benefits and defenses under California Civil Code Section 2810 and agrees that by doing so Indemnitor shall be liable even if Borrower had no liability at the time of execution of the Note, the Loan Agreement, the Security Instrument or any other Loan Document, or thereafter ceases to be liable. Indemnitor hereby waives any and all benefits and defenses under California Civil Code Section 2809 and agrees that by doing so Indemnitor's liability may be larger in amount and more burdensome than that of Borrower. Indemnitor waives all rights to require Lender to pursue any other remedy it may have against Borrower, or any member of Borrower, including any and all benefits under California Civil Code Section 2845, 2849 and 2850 until such time as all Obligations owing to Lender hereunder are fully satisfied. Indemnitor further waives any rights, defenses and benefits that may be derived from Sections 2787 to 2855, inclusive, of the California Civil Code or comparable provisions of the laws of any other jurisdiction and further waives all other suretyship defenses Indemnitor would otherwise have under the laws of California or any other jurisdiction.

(b)    Upon a default by Borrower, Lender in its sole discretion, without prior notice to or consent of Indemnitor, may elect to: (i) foreclose either judicially or nonjudicially against any real or personal property security it may hold for the Loan, (ii) accept a transfer of any such security in lieu of foreclosure, (iii) compromise or adjust the Loan or any part of it or make any other accommodation with Borrower or any Indemnitor, or (iv) exercise any other remedy against Borrower or any security. No such action by Lender shall release or limit the liability of Indemnitor, who shall remain liable under this Agreement after the action, even if the effect of the action is to deprive Indemnitor of any subrogation rights, rights of indemnity, or other rights to collect reimbursement from Borrower for any sums paid to Lender, whether contractual or arising by operation of law or otherwise. Indemnitor expressly agrees that under no circumstances shall it be deemed to have any right, title, interest or claim in or to any real or personal property to be held by Lender or any third party after any foreclosure or transfer in lieu of foreclosure of any security for the Loan.

(c)    Regardless of whether Indemnitor may have made any payments to Lender, Indemnitor hereby waives: (i) all rights of subrogation, indemnification, contribution and any other rights to collect reimbursement from Borrower or any other party for any sums paid to Lender,

whether contractual or arising by operation of law (including the United States Bankruptcy Code or any successor or similar statute) or otherwise, (ii) all rights to enforce any remedy that Lender may have against Borrower, and (iii) all rights to participate in any security now or later to be held by Lender for the Loan.  The waivers given in this subsection (c) shall be effective until the Loan has been paid and performed in full.

(d)      Indemnitor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Indemnitor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.  Indemnitor further waives any right to a fair value hearing under California Code of Civil Procedure Section 580a, or any other similar law, to determine the size of any deficiency owing (for which any Indemnitor would be liable hereunder) following a non-judicial foreclosure sale.

(e)      Without limiting the foregoing or anything else contained in this Agreement, Indemnitor waives all rights and defenses that Indemnitor may have because Borrower's Loan is secured by real property.  This means, among other things:

(i)      that Lender may collect from Indemnitor without first foreclosing on any real or personal property collateral pledged by Borrower; and

(ii)      if Lender forecloses on any real property collateral pledged by Borrower: (x) the amount of the Loan may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (y) Lender may collect from Indemnitor even if Lender, by foreclosing on the real property collateral, has destroyed any right Indemnitor may have to collect from Borrower.

This subsection (e) is an unconditional and irrevocable waiver of any rights and defenses Indemnitor may have because Borrower's Loan is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

(f)      Indemnitor waives all rights and defenses arising out of any failure of the Lender to disclose to the Indemnitor any information relating to the financial condition, operations, properties or prospects of Borrower now or in the future known to the Lender (Indemnitor waiving any duty on the part of the Lender to disclose such information).

[the remainder of this page is intentionally left blank]

IN WITNESS WHEREOF, Indemnitor has executed this Agreement as of the day and year first above written.

**INDEMNITOR**:

_____
DAVE HALL

_____
TRENT CLAUGHTON

_____
MARCO DEDOMINICIS

_____
DENNY CHOW

[signature page to Poway Outpost Indemnity and Guaranty Agreement]

## EXHIBIT A

### LEGAL DESCRIPTION

The land referred to is situated in the County of San Diego, City of Poway, State of California, and is described as follows:

PARCEL 1:
THE EASTERLY 249.50 FEET OF THE NORTHERLY 320.00 FEET OF THE WEST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 13, TOWNSHIP 14 SOUTH, RANGE 2 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF POWAY, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO UNITED STATES GOVERNMENT SURVEY.

PARCEL 2:
AN EASEMENT FOR INGRESS AND EGRESS FOR ROAD AND PUBLIC UTILITY PURPOSES OVER, UNDER, ALONG AND ACROSS THE SOUTHERLY 40.00 FEET OF THE NORTHERLY 360.00 FEET OF THE WEST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 13, TOWNSHIP 14 SOUTH, RANGE 2 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO UNITED STATES GOVERNMENT SURVEY.

EXCEPTING THEREFROM THE EASTERLY 70.00 FEET.

APN: 317-473-20

# EXHIBIT 5

Poway Outpost
Loan Number: 62041

## COMPLETION INDEMNITY AND GUARANTY AGREEMENT

THIS COMPLETION INDEMNITY AND GUARANTY AGREEMENT (this "**Agreement**") is made as of October 22, 2020 by **POWAY PROPERTY LP**, a Delaware limited partnership, authorized to transact business in the State of California, having an address of 13772 Paseo Valle Alto, Poway, California 92064 ("**Borrower**"), and by **DAVID HALL**, an individual having an address of 30254 River Ridge Drive, Calgary AB T3Z 3L1, **TRENT CLAUGHTON**, an individual having an address of 609 Sifton Blvd SW, Calgary AB T2T 2K8, **MARCO DEDOMINICIS**, an individual having an address of 41224 Circle 5 Estates, Calgary AB T3Z 2T5, and **DENNY CHOW**, an individual having an address of 240 Arbour Glen Close NW, Calgary AB T3G 3Y6 (whether one or more, "**Individual Indemnitor**"; Borrower and Individual Indemnitor are sometimes hereinafter referred to together as "**Indemnitor**"), jointly and severally, in favor of **UC FUNDING, LLC**, a Delaware limited liability company having an address c/o UC Credit Services LLC, 745 Boylston Street, Suite 502, Boston, Massachusetts 02116 (together with its successors and assigns, "**Lender**").

RECITALS:

A.    Lender has extended a loan to Borrower in the original principal amount of TWENTY-ONE MILLION ONE HUNDRED THOUSAND AND NO /100 DOLLARS ($21,100,000.00) (the "**Loan**").

B.    The Loan is evidenced by (i) a Loan Agreement of even date herewith between Borrower and Lender (the "**Loan Agreement**"), and (ii) a Promissory Note of even date herewith, executed by Borrower and payable to the order of Lender in the amount of the Loan (the "**Note**"), which Note is secured by, among other things, a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date herewith (the "**Security Instrument**") from Borrower to Lender, encumbering that certain real property described on **Exhibit A** attached hereto and made a part hereof, together with the buildings, structures and other improvements now or hereafter located thereon (collectively, the "**Property**"). This Agreement, the Loan Agreement, the Note, the Security Instrument and all other documents and instruments evidencing and/or securing the Loan, as the same may from time to time be amended, consolidated, renewed or replaced, are collectively referred to herein as the "**Loan Documents**".

C.    Individual Indemnitor will derive a substantial direct benefit from the making of the Loan to Borrower.

D.    As an inducement to Lender to make the Loan to Borrower, Indemnitor has agreed to enter into this Agreement.

NOW, THEREFORE, to induce Lender to extend the Loan to Borrower and in consideration of the foregoing premises and for other good and valuable consideration, the

receipt and sufficiency of which are hereby acknowledged, Indemnitor hereby covenants and agrees for the benefit of Lender as follows:

## ARTICLE 1
## DEFINITIONS

1.01   <u>Defined Terms</u>.   Defined terms in this Agreement shall include in the singular number the plural and in the plural number the singular. All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Note and/or the Loan Agreement. Additionally, for the purposes hereof, the following definitions shall have the following meanings:

"**Completion Date**" shall mean the date for Substantial Completion, as specified in <u>Section 2.27(c)</u> of the Loan Agreement.

"**Final Completion**" shall mean completion of all Renovations in accordance with the terms and conditions of the Loan Agreement and satisfaction of all conditions to the final Construction Disbursement from the Renovation Reserve.

"**Renovation Budget**" shall mean the renovation plan and budget attached to the Loan Agreement as Exhibit B.

"**Renovations**" shall mean the renovation of the Property in accordance with the Renovation Budget and the plans and specifications approved (or to be approved) by Lender pursuant to the Loan Agreement.

"**Soft Costs Budget**" shall mean the budget for soft costs in connection with the Renovations which are attached to the Loan Agreement as Exhibit C.

"**Substantial Completion**" shall have the meaning specified in <u>Section 2.27(c)</u> of the Loan Agreement.

## ARTICLE 2
## GUARANTY AND INDEMNITY

2.01   <u>Guaranty of Performance</u>.   Indemnitor absolutely and unconditionally guarantees to Lender that Borrower, or Individual Indemnitor on Borrower's behalf, will fully and faithfully perform and observe all of the obligations, covenants, provisions and agreements of Borrower under the Loan Agreement which pertain or relate to (a) the Substantial Completion of the Renovations on or before the Completion Date and Final Completion within a reasonable time thereafter, free from any liens or claims of any and all persons or entities performing services or labor on the Property or furnishing materials thereto, and/or (b) the payment of the cost of the foregoing, regardless of whether the cost of such performance exceeds the costs estimated in the Renovation Budget and/or Soft Costs Budget, as applicable.

2.02    <u>Guaranty of Payment</u>.  Indemnitor absolutely and unconditionally guarantees to Lender that (a) Borrower shall fully and punctually pay and discharge (i) any and all costs, expenses and liabilities for, or incurred in connection with, the Renovations as contemplated or required by the Loan Agreement as and when the same become due and payable and whether or not such amounts exceed those originally set forth in the Renovation Budget and/or Soft Costs Budget, as applicable, and (ii) all claims and demands for labor, materials and services used or incurred in connection with the Renovations which are or may become due and payable or which, if unpaid, are or may become liens on the Property or any part thereof, and (b) the Property shall be and remain free and clear of all liens from any and all persons or entities furnishing materials, labor or services for or in connection with the Renovations for a period from the date of commencement of the Renovations (whether or not such date is prior to the date hereof) to a date which is thirty (30) days after the expiration of the time allowed by law for the filing of such liens.

2.03    <u>Indemnification</u>.  In the event that Substantial Completion has not occurred on or before the Completion Date or Final Completion has not occurred within a reasonable time thereafter, or in the event the costs of the Renovations are not paid for as and when same are due and payable as aforesaid, or in the event the Property is not free of all such liens, claims and demands, or in the event of a material misrepresentation by Borrower under the Loan Agreement with respect to any matter relating directly or indirectly to the Renovations, or in the event any costs are not paid as aforesaid, Indemnitor absolutely and unconditionally agrees to indemnify, defend and hold Lender free and harmless of, from and against any and all costs, expenses, liabilities, losses, liens, encumbrances or damages (whether or not arising out of valid claims); including, but not limited to, reasonable attorneys' fees and disbursements and all damages, which may arise by reason of any of the foregoing. In the event that Lender shall (a) cause any Renovations to be performed upon the failure of Indemnitor to comply with their obligations under this Article 2 following demand upon Indemnitor for such compliance, (b) pay any amounts in connection with the Renovations upon the failure of Indemnitor to comply with the obligations under this Article 2 following demand upon Indemnitor for such compliance or (c) cause any lien, claim or demand to be released or paid or otherwise discharged, Indemnitor shall promptly within ten (10) days after demand for payment pay or reimburse Lender for all sums paid, and all reasonable costs, expenses, liabilities, losses or damages suffered or incurred, by Lender in connection therewith together with interest thereon at the Default Interest Rate, as defined in the Note, from the date such costs, expenses, liabilities, losses or damages are suffered or incurred by Lender through the date of payment or reimbursement by Indemnitor.

2.04    <u>Agreement Not a Guaranty of Collection</u>.  It is understood and agreed that this Agreement is a guaranty of performance and payment and not of collection. It is expressly understood and agreed that this Agreement is a continuing guaranty, and that the obligations of Indemnitor hereunder are and shall be absolute and unconditional under any and all circumstances, without regard to the validity, regularity or enforceability of any of the Loan Documents. Indemnitor, by the execution hereof, acknowledges receipt of true copies of all of the Loan Documents.

2.05    <u>Reinstatement of Obligations</u>.  If at any time all or any part of any payment made by Indemnitor or received by Lender from Indemnitor under or with respect to this Agreement is or must be rescinded or returned for any reason whatsoever (including, but not limited to, the

NY 00058778 v2

insolvency, bankruptcy or reorganization of any Indemnitor), then the obligations of Indemnitor hereunder shall, to the extent of the payment rescinded or returned, be deemed to have continued in existence, notwithstanding such previous payment made by Indemnitor, or receipt of payment by Lender, and the obligations of Indemnitor hereunder shall continue to be effective or be reinstated, as the case may be, as to such payment, all as though such previous payment by Indemnitor had never been made.

**ARTICLE 3**
WAIVERS

3.01    <u>Waivers by Indemnitor</u>.  To the extent permitted by law, Indemnitor hereby waives and agrees not to assert or take advantage of:

(a)    Any right to require Lender to proceed against any other person or to proceed against or exhaust any security held by Lender at any time or to pursue any other remedy in Lender's power or under any other agreement before proceeding against Indemnitor hereunder;

(b)    The defense of the statute of limitations in any action hereunder;

(c)    Any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other person or persons or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons;

(d)    Demand, presentment for payment, notice of nonpayment, protest, notice of protest and all other notices of any kind, or the lack of any thereof including, without limiting the generality of the foregoing, notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of Lender, any endorser or creditor of any Indemnitor, or any other person whomsoever under this or any other instrument in connection with any obligation or evidence of indebtedness held by Lender;

(e)    Any defense based upon an election of remedies by Lender;

(f)    Any right or claim of right to cause a marshaling of the assets of any Indemnitor;

(g)    Any principle or provision of law, statutory or otherwise, which is or might be in conflict with the terms and provisions of this Agreement;

(h)    Any duty on the part of Lender to disclose to Indemnitor any facts Lender may now or hereafter know about the Property, regardless of whether Lender has reason to believe that any such facts materially increase the risk beyond that which Indemnitor intends to assume or has reason to believe that such facts are unknown to Indemnitor or has a reasonable opportunity to communicate such facts to Indemnitor, it being understood and agreed that Indemnitor is fully responsible for being and keeping informed of the condition of the Property and of any and all circumstances bearing on the risk that liability may be incurred by Indemnitor hereunder;

(i)     Any lack of notice of disposition or of manner of disposition of any collateral for the Loan;

(j)     Any invalidity, irregularity or unenforceability, in whole or in part, of any one or more of the Loan Documents;

(k)     Any lack of commercial reasonableness in dealing with the collateral for the Loan;

(l)     Any deficiencies in the collateral for the Loan or any deficiency in the ability of Lender to collect or to obtain performance from any persons or entities now or hereafter liable for the payment and performance of any obligation hereby guaranteed;

(m)     An assertion or claim that the automatic stay provided by 11 U.S.C. §362 (arising upon the voluntary or involuntary bankruptcy proceeding of Borrower) or any other stay provided under any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any of its rights, whether now or hereafter acquired, which Lender may have against Individual Indemnitor or the collateral for the Loan;

(n)     Any modifications of the Loan Documents or any obligation of Borrower relating to the Loan by operation of law or by action of any court, whether pursuant to the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, or otherwise; and

(o)     Any action, occurrence, event or matter consented to by Indemnitor under Section 4.08 hereof, under any other provision hereof, or otherwise.

## ARTICLE 4
## MISCELLANEOUS PROVISIONS

4.01     <u>Fully Recourse</u>.  Indemnitor's obligations under this Agreement are recourse obligations and are not restricted by any limitations on personal liability contained in the Loan Documents.

4.02     <u>Unsecured Obligations</u>.  Indemnitor hereby acknowledges that Lender's appraisal of the Property is such that Lender is not willing to accept the consequences of the inclusion of Indemnitor's indemnity and guaranty set forth herein among the obligations secured by the Security Instrument and the other Loan Documents and that Lender would not make the Loan but for the unsecured personal liability undertaken by Indemnitor herein.  Indemnitor further hereby acknowledges that even though the representations, warranties, covenants or agreements of Indemnitor contained herein may be identical or substantially similar to representations, warranties, covenants or agreements of Borrower set forth in the Loan Agreement or Security Instrument and secured thereby, the obligations of Indemnitor under this Agreement are not secured by the lien of the Security Instrument or the security interests or other collateral described in the Loan Agreement, the Security Instrument or the other Loan Documents, it being

NY 00058778 v2

the intent of Lender to create separate obligations of Indemnitor hereunder which can be enforced against Indemnitor without regard to the existence of the Loan Agreement, the Security Instrument or the other Loan Documents or the liens or security interests created therein.

4.03    <u>Survival</u>.  This Agreement shall be deemed to be continuing in nature and shall remain in full force and effect and shall survive the payment of the indebtedness evidenced and secured by the Loan Documents and the exercise of any remedy by Lender under the Security Instrument or any of the other Loan Documents including, without limitation, any foreclosure or deed in lieu thereof, even if, as a part of such remedy, the Loan is paid or satisfied in full.

4.04    <u>No Subrogation; No Recourse Against Lender</u>.  Notwithstanding the satisfaction by Individual Indemnitor of any liability hereunder, Individual Indemnitor shall not have any right of subrogation, contribution, reimbursement or indemnity whatsoever or any right of recourse to or with respect to the assets or property of Borrower or to any collateral for the Loan, until the Obligations to Lender are fully satisfied.  In connection with the foregoing, Individual Indemnitor expressly waives any and all rights of subrogation to Lender against Borrower, and Individual Indemnitor hereby waives any rights to enforce any remedy which Lender may have against Borrower and any right to participate in any collateral for the Loan.  In addition to and without in any way limiting the foregoing, Individual Indemnitor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to Individual Indemnitor to all indebtedness of Borrower to Lender, and agrees with Lender that Individual Indemnitor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Individual Indemnitor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the collateral from the Loan.  Further, no Indemnitor shall have any right of recourse against Lender by reason of any action Lender may take or omit to take under the provisions of this Agreement or under the provisions of any of the Loan Documents.

4.05    <u>Reservation of Rights</u>.  Nothing contained in this Agreement shall prevent or in any way diminish or interfere with any rights or remedies including, without limitation, the right to contribution, which Lender may have against any Indemnitor or any other party under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (codified at Title 42 U.S.C. §9601 et seq.), as it may be amended from time to time, or any other applicable federal, state or local laws, all such rights being hereby expressly reserved.

4.06    <u>Financial Statements</u>.  Each Indemnitor hereby agrees to furnish to Lender, as reasonably requested by Lender, current and dated financial statements, certified by or on behalf of such Indemnitor, detailing the assets and liabilities of such Indemnitor, in form and substance acceptable to Lender.  Each Indemnitor hereby warrants and represents unto Lender that any and all balance sheets, net worth statements and other financial data which have heretofore been given or may hereafter be given to Lender with respect to such Indemnitor did or will at the time of such delivery fairly and accurately present the financial condition of such Indemnitor.

4.07    <u>Rights Cumulative; Payments</u>.  Lender's rights under this Agreement shall be in addition to all rights of Lender under the Note, the Loan Agreement, the Security Instrument and the other Loan Documents.  FURTHER, PAYMENTS MADE BY INDEMNITOR UNDER THIS AGREEMENT SHALL NOT REDUCE IN ANY RESPECT BORROWER'S

OBLIGATIONS AND LIABILITIES UNDER THE NOTE, THE LOAN AGREEMENT, THE SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS, EXCEPT TO THE EXTENT THAT ANY SUCH PAYMENT MADE BY INDEMNITOR IS MADE IN SATISFACTION OF A SPECIFIC PAYMENT OBLIGATION OF BORROWER.

4.08    <u>No Limitation on Liability</u>.  Indemnitor hereby consents and agrees that Lender may at any time and from time to time without further consent from Indemnitor do any of the following events, and the liability of Indemnitor under this Agreement shall be unconditional and absolute and shall in no way be impaired or limited by any of the following events, whether occurring with or without notice to Indemnitor or with or without consideration:  (a) any extensions of time for performance required by any of the Loan Documents or extension or renewal of the Note; (b) any sale, assignment or foreclosure of the Note, the Security Instrument or any of the other Loan Documents or any sale or transfer of the Property; (c) any change in the composition of Borrower; including, without limitation, the withdrawal or removal of any Indemnitor from any current or future position of ownership, management or control of Borrower; (d) the accuracy or inaccuracy of the representations and warranties made by Indemnitor herein or by Borrower in any of the Loan Documents; (e) the release of Borrower or of any other person or entity from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act or otherwise; (f) the release or substitution in whole or in part of any security for the Loan; (g) Lender's failure to record the Security Instrument or to file any financing statement (or Lender's improper recording or filing thereof) or to otherwise perfect, protect, secure or insure any lien or security interest given as security for the Loan; (h) the modification of the terms of any one or more of the Loan Documents; or (i) the taking or failure to take any action of any type whatsoever.  No such action which Lender shall take or fail to take in connection with the Loan Documents or any collateral for the Loan, nor any course of dealing with Borrower or any other person, shall limit, impair or release Indemnitor's obligations hereunder, affect this Agreement in any way or afford Indemnitor any recourse against Lender. Nothing contained in this Section shall be construed to require Lender to take or refrain from taking any action referred to herein.

4.09    <u>Entire Agreement; Amendment; Severability</u>.  This Agreement contains the entire agreement between the parties respecting the matters herein set forth and supersedes (except as to the Loan Agreement) all prior agreements, whether written or oral, between the parties respecting such matters.  Any amendments or modifications hereto, in order to be effective, shall be in writing and executed by the parties hereto. A determination that any provision of this Agreement is unenforceable or invalid shall not affect the enforceability or validity of any other provisions, and any determination that the application of any provision of this Agreement to any entity, person or circumstance is invalid, illegal or unenforceable to any extent shall not affect the enforceability or validity of such provision as it may apply to any other entity, persons or circumstances.

4.10    <u>Governing Law; Binding Effect; Waiver of Acceptance</u>.  This Agreement shall be governed by and construed in accordance with the laws of the state in which the Property is located, except to the extent that the applicability of any of such laws may now or hereafter be preempted by Federal law, in which case such Federal law shall so govern and be controlling. This Agreement shall bind each Indemnitor and the heirs, personal representatives, successors

NY 00058778 v2

and assigns of each Indemnitor and shall inure to the benefit of Lender and the officers, directors, shareholders, agents and employees of Lender and their respective heirs, successors and assigns. Notwithstanding the foregoing, no Indemnitor shall assign any of its rights or obligations under this Agreement without the prior written consent of Lender, which consent may be withheld by Lender in its sole discretion. Each Indemnitor hereby waives any acceptance of this Agreement by Lender, and this Agreement shall immediately be binding upon Indemnitor.

4.11    <u>Notice</u>. All notices, demands, requests or other communications to be sent by one party to the other hereunder or required by law shall be given and become effective as provided in the Loan Agreement.

4.12    <u>No Waiver; Time of Essence; Business Day</u>. The failure of any party hereto to enforce any right or remedy hereunder, or to promptly enforce any such right or remedy, shall not constitute a waiver thereof nor give rise to any estoppel against such party nor excuse any of the parties hereto from their respective obligations hereunder. Any waiver of such right or remedy must be in writing and signed by the party to be bound. This Agreement is subject to enforcement at law or in equity, including actions for damages or specific performance. Time is of the essence hereof. The term "**business day**" as used herein shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in San Diego, California are authorized by law to be closed.

4.13    <u>Captions for Convenience</u>. The captions and headings of the sections and paragraphs of this Agreement are for convenience of reference only and shall not be construed in interpreting the provisions hereof.

4.14    <u>Attorneys' Fees</u>. In the event it is necessary for Lender to retain the services of an attorney or any other consultants in order to enforce this Agreement, or any portion thereof, Indemnitor agrees to pay to Lender any and all costs and expenses; including, without limitation, attorneys' fees (at both the trial and appellate levels), incurred by Lender as a result thereof and such costs, fees and expenses shall be included in Costs.

4.15    <u>Successive Actions</u>. A separate right of action hereunder shall arise each time Lender acquires knowledge of any matter indemnified or guaranteed by Indemnitor under this Agreement. Separate and successive actions may be brought hereunder to enforce any of the provisions hereof at any time and from time to time. No action hereunder shall preclude any subsequent action, and Indemnitor hereby waives and covenants not to assert any defense in the nature of splitting of causes of action or merger of judgments.

4.16    <u>Joint and Several Liability</u>. Notwithstanding anything to the contrary contained herein, the representations, warranties, covenants and agreements made by each of the parties composing Indemnitor hereunder, and the liability of each of the parties composing Indemnitor hereunder, are joint and several. Where the context so requires, words used in the singular shall include the plural and vice versa, and words of one gender shall include all other genders.

4.17    <u>Reliance</u>. Lender would not make the Loan to Borrower without this Agreement. Accordingly, Indemnitor intentionally and unconditionally enters into the covenants and agreements as set forth above and understands that, in reliance upon and in consideration of such

covenants and agreements, the Loan shall be made and, as part and parcel thereof, specific monetary and other obligations have been, are being and shall be entered into which would not be made or entered into but for such reliance.

4.18   Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page.  Any signature page of this Agreement may be detached from any counterpart of this Agreement without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Agreement identical in form hereto but having attached to it one or more additional signature pages.

4.19   Waivers by Indemnitor.

(a)   Borrower and Individual Indemnitor covenant and agree that upon the commencement of a voluntary or involuntary bankruptcy proceeding by or against Borrower or any other indemnitor, neither Borrower nor Individual Indemnitor shall seek or cause Borrower or any other person or entity to seek a supplemental stay or other relief, whether injunctive or otherwise, pursuant to 11 U.S.C. §105 or any other provision of the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law, or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights of Lender against Individual Indemnitor or the collateral for the Loan by virtue of this Agreement or otherwise.

(b)   Individual Indemnitor covenants and agrees that it shall not solicit or aid the solicitation of the filing of any Petition (as defined in the Loan Agreement) against Borrower, whether acting on its own behalf or on behalf of any other party, including, without limitation, (i) providing information regarding the identity of creditors or the nature of creditors' claims to any third party unless compelled to do so by order of a court of competent jurisdiction or by regulation promulgated by a governmental agency; or (ii) paying the legal fees or expenses of any creditor of or interest holder in Borrower with respect to any matter whatsoever.

4.20   Litigation Provisions.

**(a)   INDEMNITOR CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED OR HAVING JURISDICTION IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED, IN WHICH ANY LEGAL PROCEEDING MAY BE COMMENCED OR PENDING RELATING IN ANY MANNER TO THIS AGREEMENT, THE LOAN, OR ANY OF THE OTHER LOAN DOCUMENTS.**

**(b)   INDEMNITOR AGREES THAT PROCESS IN ANY LEGAL PROCEEDING RELATING TO THIS AGREEMENT, THE LOAN OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE SERVED ON INDEMNITOR AT ANY LOCATION.**

(c) **INDEMNITOR AGREES THAT ANY LEGAL PROCEEDING RELATING TO THIS AGREEMENT, THE LOAN, OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE BROUGHT AGAINST INDEMNITOR IN ANY STATE OR FEDERAL COURT LOCATED OR HAVING JURISDICTION IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED. INDEMNITOR WAIVES ANY OBJECTION TO VENUE IN ANY SUCH COURT AND WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE FROM ANY SUCH COURT.**

(d) **INDEMNITOR AGREES THAT IT WILL NOT COMMENCE ANY LEGAL PROCEEDING AGAINST LENDER RELATING IN ANY MANNER TO THIS AGREEMENT, THE LOAN OR ANY OF THE OTHER LOAN DOCUMENTS IN ANY COURT OTHER THAN A STATE OR FEDERAL COURT LOCATED IN BOSTON, MASSACHUSETTS, OR IF A LEGAL PROCEEDING IS COMMENCED BY LENDER AGAINST INDEMNITOR IN A COURT IN ANOTHER LOCATION, BY WAY OF A COUNTERCLAIM IN SUCH LEGAL PROCEEDING.**

(e) **INDEMNITOR HEREBY WAIVES TRIAL BY JURY IN ANY LEGAL PROCEEDING RELATING TO THIS AGREEMENT, THE LOAN OR ANY OF THE OTHER LOAN DOCUMENTS.**

4.21    Residence/Community Property Provisions.

(a)    David Hall represents and warrants that his providence of residence is Alberta, Canada.

(b)    Trent Claughton represents and warrants that his providence of residence is Alberta, Canada.

(c)    Marco DeDeominicis represents and warrants that his providence of residence is Alberta, Canada.

(d)    Denny Chow represents and warrants that his providence of residence is Alberta, Canada.

4.22    Additional Waivers. Without limiting the generality, scope or meaning of any other provision of this Agreement:

(a)    Indemnitor hereby waives any and all benefits and defenses under California Civil Code Section 2810 and agrees that by doing so Indemnitor shall be liable even if Borrower had no liability at the time of execution of the Note, the Loan Agreement, the Security Instrument or any other Loan Document, or thereafter ceases to be liable. Indemnitor hereby waives any and all benefits and defenses under California Civil Code Section 2809 and agrees that by doing so Indemnitor's liability may be larger in amount and more burdensome than that of Borrower. Indemnitor waives all rights to require Lender to pursue any other remedy it may have against Borrower, or any member of Borrower, including any and all benefits under California Civil Code Section 2845, 2849 and 2850 until such time as all Obligations owing to Lender hereunder are fully satisfied. Indemnitor further waives any rights, defenses and benefits that may be derived from Sections 2787 to 2855, inclusive, of the California Civil Code or

comparable provisions of the laws of any other jurisdiction and further waives all other suretyship defenses Indemnitor would otherwise have under the laws of California or any other jurisdiction.

(b)      Upon a default by Borrower, Lender in its sole discretion, without prior notice to or consent of Indemnitor, may elect to: (i) foreclose either judicially or nonjudicially against any real or personal property security it may hold for the Loan, (ii) accept a transfer of any such security in lieu of foreclosure, (iii) compromise or adjust the Loan or any part of it or make any other accommodation with Borrower or any Indemnitor, or (iv) exercise any other remedy against Borrower or any security. No such action by Lender shall release or limit the liability of Indemnitor, who shall remain liable under this Agreement after the action, even if the effect of the action is to deprive Indemnitor of any subrogation rights, rights of indemnity, or other rights to collect reimbursement from Borrower for any sums paid to Lender, whether contractual or arising by operation of law or otherwise. Indemnitor expressly agrees that under no circumstances shall it be deemed to have any right, title, interest or claim in or to any real or personal property to be held by Lender or any third party after any foreclosure or transfer in lieu of foreclosure of any security for the Loan.

(c)      Regardless of whether Indemnitor may have made any payments to Lender, Indemnitor hereby waives: (i) all rights of subrogation, indemnification, contribution and any other rights to collect reimbursement from Borrower or any other party for any sums paid to Lender, whether contractual or arising by operation of law (including the United States Bankruptcy Code or any successor or similar statute) or otherwise, (ii) all rights to enforce any remedy that Lender may have against Borrower, and (iii) all rights to participate in any security now or later to be held by Lender for the Loan. The waivers given in this subsection (c) shall be effective until the Loan has been paid and performed in full.

(d)      Indemnitor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Indemnitor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise. Indemnitor further waives any right to a fair value hearing under California Code of Civil Procedure Section 580a, or any other similar law, to determine the size of any deficiency owing (for which any Indemnitor would be liable hereunder) following a non-judicial foreclosure sale.

(e)      Without limiting the foregoing or anything else contained in this Agreement, Indemnitor waives all rights and defenses that Indemnitor may have because Borrower's Loan is secured by real property. This means, among other things:

(i)      that Lender may collect from Indemnitor without first foreclosing on any real or personal property collateral pledged by Borrower; and

(ii)      if Lender forecloses on any real property collateral pledged by Borrower: (x) the amount of the Loan may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (y) Lender may collect from Indemnitor even if Lender, by foreclosing on the

real property collateral, has destroyed any right Indemnitor may have to collect from Borrower.

This subsection (e) is an unconditional and irrevocable waiver of any rights and defenses Indemnitor may have because Borrower's Loan is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

      (f)      Indemnitor waives all rights and defenses arising out of any failure of the Lender to disclose to the Indemnitor any information relating to the financial condition, operations, properties or prospects of Borrower now or in the future known to the Lender (Indemnitor waiving any duty on the part of the Lender to disclose such information).

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Indemnitor has executed this Agreement as of the day and year first above written.

<u>**BORROWER**</u>:

**POWAY PROPERTY LP**, a Delaware limited partnership

By:    Capexco US GP Inc., its general partner

By: _____
Name: *Trent Claughton*
Title: *President*

<u>**INDIVIDUAL INDEMNITOR**</u>:

_____
DAVID HALL

_____
TRENT CLAUGHTON

_____
MARCO DEDOMINICIS

_____
DENNY CHOW

[signature page to Poway Outpost Completion Indemnity and Guaranty Agreement]

EXHIBIT A
**LEGAL DESCRIPTION**

The land referred to is situated in the County of San Diego, City of Poway, State of California, and is described as follows:

PARCEL 1:
THE EASTERLY 249.50 FEET OF THE NORTHERLY 320.00 FEET OF THE WEST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 13, TOWNSHIP 14 SOUTH, RANGE 2 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF POWAY, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO UNITED STATES GOVERNMENT SURVEY.

PARCEL 2:
AN EASEMENT FOR INGRESS AND EGRESS FOR ROAD AND PUBLIC UTILITY PURPOSES OVER, UNDER, ALONG AND ACROSS THE SOUTHERLY 40.00 FEET OF THE NORTHERLY 360.00 FEET OF THE WEST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 13, TOWNSHIP 14 SOUTH, RANGE 2 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO UNITED STATES GOVERNMENT SURVEY.

EXCEPTING THEREFROM THE EASTERLY 70.00 FEET.

APN: 317-473-20

**EXHIBIT A**
**Page 174**

# EXHIBIT 6

Poway Outpost
Loan Number: 62041

## HAZARDOUS SUBSTANCES INDEMNITY AGREEMENT

**THIS HAZARDOUS SUBSTANCES INDEMNITY AGREEMENT** (this "**Agreement**") is made as of October 22, 2020 by **POWAY PROPERTY LP**, a Delaware limited partnership, authorized to transact business in the State of California, having an address of 13772 Paseo Valle Alto, Poway, California 92064 ("**Borrower**"), and by **DAVID HALL**, an individual having an address of 30254 River Ridge Drive, Calgary AB  T3Z 3L1, **TRENT CLAUGHTON**, an individual having an address of 609 Sifton Blvd SW, Calgary AB  T2T 2K8, **MARCO DEDOMINICIS**, an individual having an address of 41224 Circle 5 Estates, Calgary AB  T3Z 2T5, and **DENNY CHOW**, an individual having an address of 240 Arbour Glen Close NW, Calgary AB T3G 3Y6 (whether one or more, "**Individual Indemnitor**" ; Borrower and Individual Indemnitor are sometimes hereinafter referred to together as "**Indemnitor**"), jointly and severally, in favor of **UC FUNDING, LLC**, a Delaware limited liability company having an address c/o UC Credit Services LLC, 745 Boylston Street, Suite 502, Boston, Massachusetts 02116 (together with its successors and assigns, "**Lender**").

RECITALS:

A.     Lender has extended a loan to Borrower in the original principal amount of TWENTY-ONE MILLION ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($21,100,000.00) (the "**Loan**").

B.     The Loan is evidenced by (i) a Loan Agreement of even date herewith between Borrower and Lender (the "**Loan Agreement**"), and (ii) a Promissory Note of even date herewith, executed by Borrower and payable to the order of Lender in the amount of the Loan (the "**Note**"), which Note is secured by, among other things, a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing of even date herewith (the "**Security Instrument**"), from Borrower to Lender, encumbering that certain real property described on Exhibit A attached hereto and made a part hereof, together with the buildings, structures and other improvements now or hereafter located thereon (collectively, the "**Property**").  This Agreement, the Loan Agreement, the Note, the Security Instrument and all other documents and instruments evidencing and/or securing the Loan, as the same may from time to time be amended, consolidated, renewed or replaced, are collectively referred to herein as the "**Loan Documents**".  Any capitalized terms used, but not defined herein, shall have the meanings set forth in the Note and/or Loan Agreement.

C.     As a condition to making the Loan, Lender has required that Indemnitor indemnify Lender with respect to Hazardous Substances on, in, under or affecting the Property as herein set forth.

NOW, THEREFORE, to induce Lender to extend the Loan to Borrower and in consideration of the foregoing premises and for other good and valuable consideration, the

receipt and sufficiency of which are hereby acknowledged, Indemnitor hereby jointly and severally covenants and agrees for the benefit of Lender as follows:

# ARTICLE 1
## INDEMNIFICATION

1.01   <u>INDEMNITY</u>.   INDEMNITOR COVENANTS AND AGREES, AT INDEMNITOR'S SOLE COST AND EXPENSE, TO INDEMNIFY, DEFEND (AT TRIAL AND APPELLATE LEVELS, AND WITH ATTORNEYS, CONSULTANTS AND EXPERTS ACCEPTABLE TO LENDER), AND HOLD LENDER HARMLESS FROM AND AGAINST ANY AND ALL LIENS, DAMAGES, LOSSES, LIABILITIES, OBLIGATIONS, SETTLEMENT PAYMENTS, PENALTIES, ASSESSMENTS, CITATIONS, DIRECTIVES, CLAIMS, LITIGATION, DEMANDS, DEFENSES, JUDGMENTS, SUITS, PROCEEDINGS, COSTS, DISBURSEMENTS AND EXPENSES OF ANY KIND OR OF ANY NATURE WHATSOEVER (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS', CONSULTANTS' AND EXPERTS' FEES AND DISBURSEMENTS ACTUALLY INCURRED IN INVESTIGATING, DEFENDING, SETTLING OR PROSECUTING ANY CLAIM, LITIGATION OR PROCEEDING) (COLLECTIVELY, "**<u>COSTS</u>**") WHICH MAY AT ANY TIME BE IMPOSED UPON, INCURRED BY OR ASSERTED OR AWARDED AGAINST LENDER OR THE PROPERTY, AND ARISING DIRECTLY OR INDIRECTLY FROM OR OUT OF:  (a) THE PRESENCE, RELEASE OR THREAT OF RELEASE OF ANY HAZARDOUS SUBSTANCES ON, IN, UNDER, AFFECTING OR THREATENING TO AFFECT ALL OR ANY PORTION OF THE PROPERTY OR ANY SURROUNDING AREAS, REGARDLESS OF WHETHER OR NOT CAUSED BY OR WITHIN THE CONTROL OF INDEMNITOR; (b) THE VIOLATION OF ANY ENVIRONMENTAL LAWS RELATING TO, AFFECTING OR THREATENING TO AFFECT THE PROPERTY, WHETHER OR NOT CAUSED BY OR WITHIN THE CONTROL OF INDEMNITOR; (c) THE FAILURE BY INDEMNITOR TO COMPLY FULLY WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT; (d) THE BREACH OF ANY REPRESENTATION OR WARRANTY CONTAINED IN THIS AGREEMENT; OR (e) THE ENFORCEMENT OF THIS AGREEMENT; INCLUDING, WITHOUT LIMITATION, THE COST OF ASSESSMENT, CONTAINMENT AND/OR REMOVAL OF ANY AND ALL HAZARDOUS SUBSTANCES ON AND/OR FROM ALL OR ANY PORTION OF THE PROPERTY OR ANY SURROUNDING AREAS, THE COST OF ANY ACTIONS TAKEN IN RESPONSE TO THE PRESENCE, RELEASE OR THREAT OF RELEASE OF ANY HAZARDOUS SUBSTANCES ON, IN, UNDER OR AFFECTING ANY PORTION OF THE PROPERTY OR ANY SURROUNDING AREAS TO PREVENT OR MINIMIZE SUCH RELEASE OR THREAT OF RELEASE SO THAT IT DOES NOT MIGRATE OR OTHERWISE CAUSE OR THREATEN DANGER TO PRESENT OR FUTURE PUBLIC HEALTH, SAFETY, WELFARE OR THE ENVIRONMENT, AND COSTS INCURRED TO COMPLY WITH THE ENVIRONMENTAL LAWS IN CONNECTION WITH ALL OR ANY PORTION OF THE PROPERTY OR ANY SURROUNDING AREAS.   "**<u>COSTS</u>**" AS USED IN THIS AGREEMENT SHALL ALSO INCLUDE ANY DIMINUTION IN THE VALUE OF THE SECURITY AFFORDED BY THE PROPERTY OR ANY REDUCTION OF THE SALES PRICE OF THE PROPERTY BY REASON OF ANY MATTER SET FORTH IN THIS <u>ARTICLE 1</u>, AND ANY AND ALL LIENS, DAMAGES, LOSSES, LIABILITIES, OBLIGATIONS, SETTLEMENT PAYMENTS, PENALTIES, ASSESSMENTS, CITATIONS,

NY 00058779 v2

DIRECTIVES, CLAIMS, LITIGATION, DEMANDS, DEFENSES, JUDGMENTS, SUITS, PROCEEDINGS, COSTS, DISBURSEMENTS OR EXPENSES OF ANY KIND OR OF ANY NATURE WHATSOEVER ARISING OUT OF OR RELATING TO INJURY OR DEATH DUE TO EXPOSURE FROM HAZARDOUS SUBSTANCES THAT MAY BE PRESENT OR RELEASED AT, ON, UNDER OR FROM THE PROPERTY. LENDER'S RIGHTS UNDER THIS SECTION SHALL SURVIVE PAYMENT IN FULL OF THE INDEBTEDNESS SECURED BY THE SECURITY INSTRUMENT AND SHALL BE IN ADDITION TO ALL OTHER RIGHTS OF LENDER UNDER THIS AGREEMENT, THE SECURITY INSTRUMENT, THE NOTE, THE LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS.

      1.02    <u>Indemnification Procedures</u>.

          (a)    If any action shall be brought against Lender based upon any of the matters for which Lender is indemnified hereunder, Lender shall notify Indemnitor in writing and Indemnitor shall promptly assume the defense thereof including, without limitation, the employment of counsel acceptable to Lender and the negotiation of any settlement; provided, however, that any failure of Lender to notify Indemnitor of such matter shall not impair or reduce the obligations of Indemnitor hereunder. Lender shall have the right, at the expense of Indemnitor (which expense shall be included in Costs), to employ separate counsel in any such action and to participate in the defense thereof. In the event Indemnitor shall fail to discharge or undertake to defend Lender against any claim, loss or liability for which Lender is indemnified hereunder, Lender may, at its sole option and election, defend or settle such claim, loss or liability. The liability of Indemnitor to Lender hereunder shall be conclusively established by such settlement, provided such settlement is made in good faith, the amount of such liability to include both the settlement consideration and the costs and expenses including, without limitation, attorneys' fees and disbursements (at both the trial and appellate levels) incurred by Lender in effecting such settlement. In such event, such settlement consideration, costs and expenses shall be included in Costs and Indemnitor shall pay the same as hereinafter provided. Lender's good faith in any such settlement shall be conclusively established if the settlement is made on the advice of independent legal counsel for Lender.

          (b)    Indemnitor shall not, without the prior written consent of Lender: (i) settle or compromise any action, suit, proceeding or claim or consent to the entry of any judgment that does not include as an unconditional term thereof the delivery by the claimant or plaintiff to Lender of a full and complete written release of Lender (in form, scope and substance satisfactory to Lender in its sole discretion) from all liability in respect of such action, suit, proceeding or claim and a dismissal with prejudice of such action, suit, proceeding or claim; or (ii) settle or compromise any action, suit, proceeding or claim in any manner that may adversely affect Lender or obligate Lender to pay any sum or perform any obligation as determined by Lender in its sole discretion.

          (c)    All Costs shall be immediately reimbursable to Lender when and as incurred and, in the event of any litigation, claim or other proceeding, without any requirement of waiting for the ultimate outcome of such litigation, claim or other proceeding, and Indemnitor shall pay to Lender any and all Costs within ten (10) days after written notice from Lender itemizing the amounts thereof incurred to the date of such notice. In addition to any other

remedy available for the failure of Indemnitor to periodically pay such Costs, such Costs, if not paid within said ten-day period, shall bear interest at the Default Interest Rate (as defined in the Note).

        1.03   <u>Reinstatement of Obligations</u>.  If at any time all or any part of any payment made by Indemnitor or received by Lender from Indemnitor under or with respect to this Agreement is or must be rescinded or returned for any reason whatsoever (including, but not limited to, the insolvency, bankruptcy or reorganization of either Indemnitor), then the obligations of Indemnitor hereunder shall, to the extent of the payment rescinded or returned, be deemed to have continued in existence, notwithstanding such previous payment made by Indemnitor, or receipt of payment by Lender, and the obligations of Indemnitor hereunder shall continue to be effective or be reinstated, as the case may be, as to such payment, all as though such previous payment by Indemnitor had never been made.

**ARTICLE 2**
**REPRESENTATIONS, WARRANTIES AND COVENANTS**

        2.01   <u>Representations Regarding Hazardous Substances</u>.  Indemnitor hereby represents and warrants to and covenants and agrees with Lender, after due inquiry and investigation, that, except as disclosed in the Phase I Environmental Site Assessment Report of the Property prepared by CBRE Inc. dated May 5, 2020:

        (a)   The Property is not, and to the best of Indemnitor's knowledge, information and belief, the Property has not been, in direct or indirect violation of any Environmental Laws;

        (b)   No Hazardous Substances are located on or, to the best of Indemnitor's knowledge, information and belief, have been handled, manufactured, generated, stored, processed, transported to or from, or disposed of on or Released or discharged from the Property (including underground contamination) except for those substances used by Borrower or its Tenants in the ordinary course of its business and in compliance with all Environmental Laws;

        (c)   The Property is not subject to any private or governmental lien or judicial, administrative, or other notice or action relating to Hazardous Substances or noncompliance with Environmental Laws, nor is Indemnitor aware of any basis for such lien, notice or action;

        (d)   There are no underground storage tanks or other underground storage receptacles (whether active or abandoned) for Hazardous Substances on the Property;

        (e)   Indemnitor has received no notice of, and to the best of Indemnitor's knowledge and belief, there does not exist any investigation, action, proceeding or claim by any agency, authority or unit of government or by any third party which could result in any liability, penalty, sanction or judgment under any Environmental Laws with respect to any condition, use or operation of the Property nor does Indemnitor know of any basis for such a claim;

        (f)   Indemnitor has received no notice that, and to the best of Indemnitor's knowledge and belief, there has been no claim by any party that, any use, operation or condition

4

of the Property has caused any nuisance, trespass, or any other liability or adverse condition on any other property nor does Indemnitor know of any basis for such notice or claim; and

(g)    There are no present environmental conditions or events or, to the best of Indemnitor's knowledge, past environmental conditions or events on or near the Property that could be reasonably anticipated to materially adversely affect the value of the Property.

2.02    Covenants of Indemnitor.

(a)    Indemnitor shall keep or cause the Property to be kept free from Hazardous Substances (except those substances used by Indemnitor or its Tenants in the ordinary course of their business and in compliance with all Environmental Laws) and in compliance with all Environmental Laws, shall not install or use any underground storage tanks, shall expressly prohibit the use, generation, handling, storage, production, processing and disposal of Hazardous Substances by all Tenants (except those substances used by Tenants in the ordinary course of their activities and in compliance with all Environmental Laws), invitees and trespassers, and, without limiting the generality of the foregoing, during the term of this Agreement, shall not install at the Property or permit to be installed at the Property asbestos or any substance containing asbestos.  If required by Lender or under any Environmental Law, Borrower shall maintain an Operations and Maintenance Program for the management of asbestos, lead-based paint, radon or any other Hazardous Substances at the Property.

(b)    Indemnitor shall promptly notify Lender if Indemnitor shall become aware of (i) any Release or threatened Release of Hazardous Substances at, on, under, from, or affecting or threatening to affect the Property (except those substances used by Borrower or Tenants in the ordinary course of their business or activities, respectively, and in compliance with all Environmental Laws), (ii) any lien or filing of lien, action or notice affecting or threatening to affect the Property or Indemnitor resulting from any violation or alleged violation of Environmental Law, (iii) the institution of any investigation, inquiry or proceeding concerning Indemnitor or the Property pursuant to any Environmental Law or otherwise relating to Hazardous Substances, or (iv) any occurrence, condition or state of facts which would render any representation or warranty contained in this Agreement incorrect in any respect if made at the time of such discovery.  Further, immediately upon receipt of the same, Indemnitor shall deliver to Lender copies of any and all orders, notices, permits, applications, reports, and other communications, documents and instruments pertaining to the actual, alleged or potential non-compliance with any Environmental Laws in connection with the Property or presence or existence of any Hazardous Substances at, on, about, under, within, near or in connection with the Property (except those substances used in the ordinary course of its business and in compliance with all Environmental Laws).  Indemnitor shall, promptly and when and as required, at its sole cost and expense, take all actions as shall be necessary or advisable for the compliance with the terms of this Agreement or for the remediation of any and all portions of the Property or other affected property including, without limitation, all investigative, monitoring, removal, containment, remedial, and response actions in accordance with all applicable Environmental Laws (and in all events in a manner satisfactory to Lender), and shall further pay or cause to be paid, at no expense to Lender, all remediation, response, administrative and enforcement costs of applicable governmental agencies which may be asserted against the Property.  In the event Indemnitor fails to do so, (A) Lender may take or cause to be taken, but

shall have no obligation to take or cause to be taken, steps to remove, contain or remediate any Release or threatened Release of Hazardous Substances at the Property or other affected property or otherwise to have the Property brought into conformance with Environmental Laws, and (B) Indemnitor hereby grants to Lender access to the Property and an irrevocable license to remove any items deemed by Lender to be Hazardous Substances and to do all things Lender shall deem necessary to bring the Property into conformance with Environmental Laws.  Any and all costs and expenses reasonably incurred by Lender in connection therewith shall be included in Costs and shall be paid by Indemnitor in accordance with Section 1.02 hereof.

(c)     Upon Lender's request at any time after the occurrence of an Event of Default or at such other time as Lender has reasonable grounds to believe that Hazardous Substances are being or have been handled, generated, stored, processed, transported to or from, or released or discharged from or disposed of on or around the Property (other than in the normal course of Borrower's or the Tenants' business or activities, respectively, and in compliance with all Environmental Laws), or that the Property may be in violation of Environmental Laws, Indemnitor shall provide, at Indemnitor's sole cost and expense, an inspection or audit of the Property prepared by a hydrogeologist or environmental engineer or other appropriate consultant approved by Lender to determine whether there has been a Release or threatened Release of Hazardous Substances at, on, under, or from the Property onto adjoining properties and if the Property is in full compliance with Environmental Laws (including, without limitation, with respect to asbestos containing materials and lead based paint).  If Indemnitor fails to provide such inspection or audit within thirty (30) days after such request, Lender may order the same, and Indemnitor hereby grants to Lender and its employees and agents access to the Property and a license to undertake such inspection or audit.  The cost of such inspection or audit shall be included in Costs and shall be paid by Indemnitor in accordance with the terms of Section 1.02 hereof.

(d)     Indemnitor agrees that if, prior to the date hereof or at any time hereafter, any inspection or audit reveals (or revealed, as applicable) the presence of Mold in the indoor air of the Property at concentrations exceeding ambient air levels, or visible Mold on any building materials or surfaces at the Property for which the EPA Mold Guidelines recommends or requires removal thereof by remediation professionals, then, on or before thirty (30) days following (i) the date hereof, if such inspection or audit was made prior to the date hereof or (ii) such inspection or audit, if such inspection or audit is hereafter made, as applicable, Indemnitor shall, at its sole cost and expense, develop and implement, and thereafter diligently and continuously carry out (or cause to be developed and implemented and thereafter diligently and continually to be carried out), an operations, abatement and maintenance plan (the "**Mold O&M Plan**") to monitor, maintain and remediate any water filtration and Mold issues affecting the Property, which plan shall be prepared by an expert, and be in form, scope and substance acceptable to Lender and sufficient to cause the Property to comply with all applicable laws and all EPA Mold Guidelines and in accordance with the Mold O&M Plan.  If a Mold O&M Plan has been prepared prior to the date hereof, Indemnitor agrees to diligently and continually carry out (or cause to be carried out) the provisions thereof.  Compliance with the Mold O&M Plan shall require or be deemed to require, without limitation, the proper preparation and maintenance of all records, papers and forms required under the Environmental Laws.  For purposes hereof, "**EPA Mold Guidelines**" shall mean the guidelines set forth in "**Mold Remediation in Schools and Commercial Buildings**" prepared by the U.S. Environmental Protection Agency.

2.03    <u>Waivers by Indemnitor</u>.    To the extent permitted by law, Indemnitor hereby waives and agrees not to assert or take advantage of:

(a)    Any right to require Lender to proceed against any other person or to proceed against or exhaust any security held by Lender at any time or to pursue any other remedy in Lender's power or under any other agreement before proceeding against Indemnitor hereunder;

(b)    The defense of the statute of limitations in any action hereunder;

(c)    Any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other person or persons or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons;

(d)    Demand, presentment for payment, notice of nonpayment, protest, notice of protest and all other notices of any kind, or the lack of any thereof including, without limiting the generality of the foregoing, notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of Lender, any endorser or creditor of any Indemnitor, or any other person whomsoever under this or any other instrument in connection with any obligation or evidence of indebtedness held by Lender;

(e)    Any defense based upon an election of remedies by Lender;

(f)    Any right or claim of right to cause a marshaling of the assets of any Indemnitor;

(g)    Any principle or provision of law, statutory or otherwise, which is or might be in conflict with the terms and provisions of this Agreement;

(h)    Any duty on the part of Lender to disclose to Indemnitor any facts Lender may now or hereafter know about the Property, regardless of whether Lender has reason to believe that any such facts materially increase the risk beyond that which Indemnitor intends to assume or has reason to believe that such facts are unknown to Indemnitor or has a reasonable opportunity to communicate such facts to Indemnitor, it being understood and agreed that Indemnitor is fully responsible for being and keeping informed of the condition of the Property and of any and all circumstances bearing on the risk that liability may be incurred by Indemnitor hereunder;

(i)    Any lack of notice of disposition or of manner of disposition of any collateral for the Loan;

(j)    Any invalidity, irregularity or unenforceability, in whole or in part, of any one or more of the Loan Documents;

(k)    Any lack of commercial reasonableness in dealing with the collateral for the Loan;

NY 00058779 v2

7

(l)     Any deficiencies in the collateral for the Loan or any deficiency in the ability of Lender to collect or to obtain performance from any persons or entities now or hereafter liable for the payment and performance of any obligation hereby guaranteed;

(m)     An assertion or claim that the automatic stay provided by 11 U.S.C. §362 (arising upon the voluntary or involuntary bankruptcy proceeding of Borrower) or any other stay provided under any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any of its rights, whether now or hereafter acquired, which Lender may have against Individual Indemnitor or the collateral for the Loan;

(n)     Any modifications of the other Loan Documents or any obligation of Borrower relating to the Loan by operation of law or by action of any court, whether pursuant to the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, or otherwise; and

(o)     Any action, occurrence, event or matter consented to by Indemnitor under Section 3.08 hereof, under any other provision hereof, or otherwise.

## ARTICLE 3
## MISCELLANEOUS PROVISIONS

3.01     Fully Recourse.  Indemnitor's obligations under this Agreement are recourse obligations and are not restricted by any limitations on personal liability contained in the Loan Documents.

3.02     Unsecured Obligations.  Indemnitor hereby acknowledges that Lender's appraisal of the Property is such that Lender is not willing to accept the consequences of the inclusion of Indemnitor's indemnity set forth herein among the obligations secured by the Security Instrument and the other Loan Documents and that Lender would not make the Loan but for the unsecured personal liability undertaken by Indemnitor herein.  Indemnitor further hereby acknowledges that even though the representations, warranties, covenants or agreements of Indemnitor contained herein may be identical or substantially similar to representations, warranties, covenants or agreements of Borrower set forth in the Loan Agreement or Security Instrument and secured thereby, the obligations of Indemnitor under this Agreement are not secured by the lien of the Security Instrument or the security interests or other collateral described in the Loan Agreement, the Security Instrument or the other Loan Documents, it being the intent of Lender to create separate obligations of Indemnitor hereunder which can be enforced against Indemnitor without regard to the existence of the Loan Agreement, the Security Instrument or the other Loan Documents or the liens or security interests created therein.

3.03     Survival.  This Agreement shall be deemed to be continuing in nature and shall remain in full force and effect and shall survive the payment of the indebtedness evidenced and secured by the Loan Documents and the exercise of any remedy by Lender under the Security

Instrument or any of the other Loan Documents; including, without limitation, any foreclosure or deed in lieu thereof, even if, as a part of such remedy, the Loan is paid or satisfied in full.

3.04    <u>No Subrogation; No Recourse Against Lender</u>.    Notwithstanding the satisfaction by Individual Indemnitor of any liability hereunder, Individual Indemnitor shall not have any right of subrogation, contribution, reimbursement or indemnity whatsoever or any right of recourse to or with respect to the assets or property of Borrower or to any collateral for the Loan, until the Obligations to Lender are fully satisfied.    In connection with the foregoing, Individual Indemnitor expressly waives any and all rights of subrogation to Lender against Borrower, and Individual Indemnitor hereby waives any rights to enforce any remedy which Lender may have against Borrower and any right to participate in any collateral for the Loan.    In addition to and without in any way limiting the foregoing, Individual Indemnitor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to Individual Indemnitor to all indebtedness of Borrower to Lender, and agrees with Lender that Individual Indemnitor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Individual Indemnitor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the collateral from the Loan.    Further, neither Indemnitor shall have any right of recourse against Lender by reason of any action Lender may take or omit to take under the provisions of this Agreement or under the provisions of any of the Loan Documents.

3.05    <u>Reservation of Rights</u>.    Nothing contained in this Agreement shall prevent or in any way diminish or interfere with any rights or remedies; including, without limitation, the right to contribution, which Lender may have against any Indemnitor or any other party under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (codified at Title 42 U.S.C. §9601 et seq.), as it may be amended from time to time, or any other applicable federal, state or local laws, all such rights being hereby expressly reserved.

3.06    <u>Financial Statements</u>.    Each Indemnitor hereby agrees to furnish to Lender, as reasonably requested by Lender, current and dated financial statements, certified by or on behalf of each Indemnitor, detailing the assets and liabilities of such Indemnitor, in form and substance acceptable to Lender.    Each Indemnitor hereby warrants and represents unto Lender that any and all balance sheets, net worth statements and other financial data which have heretofore been given or may hereafter be given to Lender with respect to such Indemnitor did or will at the time of such delivery fairly and accurately present the financial condition of such Indemnitor.

3.07    <u>Rights Cumulative; Payments</u>.    Lender's rights under this Agreement shall be in addition to all rights of Lender under the Note, the Loan Agreement, the Security Instrument and the other Loan Documents.    FURTHER, PAYMENTS MADE BY INDEMNITOR UNDER THIS AGREEMENT SHALL NOT REDUCE IN ANY RESPECT BORROWER'S OBLIGATIONS AND LIABILITIES UNDER THE NOTE, THE LOAN AGREEMENT, THE SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS, EXCEPT TO THE EXTENT THAT ANY SUCH PAYMENT MADE BY INDEMNITOR IS MADE IN SATISFACTION OF A SPECIFIC PAYMENT OBLIGATION OF BORROWER.

3.08    <u>No Limitation on Liability</u>.    Indemnitor hereby consents and agrees that Lender may at any time and from time to time without further consent from Indemnitor do any of the

NY 00058779 v2

following events, and the liability of Indemnitor under this Agreement shall be unconditional and absolute and shall in no way be impaired or limited by any of the following events, whether occurring with or without notice to Indemnitor or with or without consideration:  (a) any extensions of time for performance required by any of the Loan Documents or extension or renewal of the Note; (b) any sale, assignment or foreclosure of the Note, the Security Instrument or any of the other Loan Documents or any sale or transfer of the Property; (c) any change in the composition of Borrower; including, without limitation, the withdrawal or removal of any Indemnitor from any current or future position of ownership, management or control of Borrower; (d) the accuracy or inaccuracy of the representations and warranties made by Indemnitor herein or by Borrower in any of the other Loan Documents; (e) the release of Borrower or of any other person or entity from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender's voluntary act or otherwise; (f) the release or substitution in whole or in part of any security for the Loan; (g) Lender's failure to record the Security Instrument or to file any financing statement (or Lender's improper recording or filing thereof) or to otherwise perfect, protect, secure or insure any lien or security interest given as security for the Loan; (h) the modification of the terms of any one or more of the Loan Documents; or (i) the taking or failure to take any action of any type whatsoever.  No such action which Lender shall take or fail to take in connection with the Loan Documents or any collateral for the Loan, nor any course of dealing with Borrower or any other person, shall limit, impair or release Indemnitor's obligations hereunder, affect this Agreement in any way or afford Indemnitor any recourse against Lender. Nothing contained in this Section shall be construed to require Lender to take or refrain from taking any action referred to herein.

      3.09   <u>Entire Agreement; Amendment; Severability</u>.  This Agreement contains the entire agreement between the parties respecting the matters herein set forth and supersedes (except as to the Loan Agreement) all prior agreements, whether written or oral, between the parties respecting such matters.  Any amendments or modifications hereto, in order to be effective, shall be in writing and executed by the parties hereto. A determination that any provision of this Agreement is unenforceable or invalid shall not affect the enforceability or validity of any other provisions, and any determination that the application of any provision of this Agreement to any entity, person or circumstance is invalid, illegal or unenforceable to any extent shall not affect the enforceability or validity of such provision as it may apply to any other entity, persons or circumstances.

      3.10   <u>Governing Law; Binding Effect; Waiver of Acceptance</u>.  This Agreement shall be governed by and construed in accordance with the laws of the state in which the Property is located, except to the extent that the applicability of any of such laws may now or hereafter be preempted by Federal law, in which case such Federal law shall so govern and be controlling. This Agreement shall bind each Indemnitor and the heirs, personal representatives, successors and assigns of each Indemnitor and shall inure to the benefit of Lender and the officers, directors, shareholders, agents and employees of Lender and their respective heirs, successors and assigns. Notwithstanding the foregoing, no Indemnitor shall assign any of its rights or obligations under this Agreement without the prior written consent of Lender, which consent may be withheld by Lender in its sole discretion.  Each Indemnitor hereby waives any acceptance of this Agreement by Lender, and this Agreement shall immediately be binding upon Indemnitor.

3.11     Notice.  All notices, demands, requests or other communications to be sent by one party to the other hereunder or required by law shall be given and become effective as provided in the Loan Agreement.

3.12     No Waiver; Time of Essence; Business Day.    The failure of any party hereto to enforce any right or remedy hereunder, or to promptly enforce any such right or remedy, shall not constitute a waiver thereof nor give rise to any estoppel against such party nor excuse any of the parties hereto from their respective obligations hereunder.  Any waiver of such right or remedy must be in writing and signed by the party to be bound.  This Agreement is subject to enforcement at law or in equity, including actions for damages or specific performance.  Time is of the essence hereof.  The term "**business day**" as used herein shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in San Diego, California are authorized by law to be closed.

3.13     Captions for Convenience.   The captions and headings of the sections and paragraphs of this Agreement are for convenience of reference only and shall not be construed in interpreting the provisions hereof.

3.14     Attorneys' Fees.  In the event it is necessary for Lender to retain the services of an attorney or any other consultants in order to enforce this Agreement, or any portion thereof, Indemnitor agrees to pay to Lender any and all costs and expenses; including, without limitation, attorneys' fees (at both the trial and appellate levels), incurred by Lender as a result thereof and such costs, fees and expenses shall be included in Costs.

3.15     Successive Actions.  A separate right of action hereunder shall arise each time Lender acquires knowledge of any matter indemnified or guaranteed by Indemnitor under this Agreement.  Separate and successive actions may be brought hereunder to enforce any of the provisions hereof at any time and from time to time.  No action hereunder shall preclude any subsequent action, and Indemnitor hereby waives and covenants not to assert any defense in the nature of splitting of causes of action or merger of judgments.

3.16     Joint and Several Liability.  Notwithstanding anything to the contrary contained herein, the representations, warranties, covenants and agreements made by each of the parties composing Indemnitor hereunder, and the liability of each of the parties composing Indemnitor hereunder, are joint and several.  Where the context so requires, words used in the singular shall include the plural and vice versa, and words of one gender shall include all other genders.

3.17     Reliance.  Lender would not make the Loan to Borrower without this Agreement.  Accordingly, Indemnitor intentionally and unconditionally enters into the covenants and agreements as set forth above and understands that, in reliance upon and in consideration of such covenants and agreements, the Loan shall be made and, as part and parcel thereof, specific monetary and other obligations have been, are being and shall be entered into which would not be made or entered into but for such reliance.

3.18     Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all

parties hereto had signed the same signature page. Any signature page of this Agreement may be detached from any counterpart of this Agreement without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Agreement identical in form hereto but having attached to it one or more additional signature pages.

3.19    Waivers by Indemnitor.

(a)    Borrower and Individual Indemnitor covenant and agree that, upon the commencement of a voluntary or involuntary bankruptcy proceeding by or against Borrower or any other indemnitor, neither Borrower nor Individual Indemnitor shall seek or cause Borrower or any other person or entity to seek, a supplemental stay or other relief, whether injunctive or otherwise, pursuant to 11 U.S.C. §105 or any other provision of the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law, or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights of Lender against Individual Indemnitor or the collateral for the Loan by virtue of this Agreement or otherwise.

(b)    Individual Indemnitor covenants and agrees that it shall not solicit or aid the solicitation of the filing of any Petition (as defined in the Loan Agreement) against Borrower, whether acting on its own behalf or on behalf of any other party, including, without limitation, (i) providing information regarding the identity of creditors or the nature of creditors' claims to any third party unless compelled to do so by order of a court of competent jurisdiction or by regulation promulgated by a governmental agency; or (ii) paying the legal fees or expenses of any creditor of or interest holder in Borrower with respect to any matter whatsoever.

3.20    Litigation Provisions.

**(a)    INDEMNITOR CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED OR HAVING JURISDICTION IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED, IN WHICH ANY LEGAL PROCEEDING MAY BE COMMENCED OR PENDING RELATING IN ANY MANNER TO THIS AGREEMENT, THE LOAN, OR ANY OF THE OTHER LOAN DOCUMENTS.**

**(b)    INDEMNITOR AGREES THAT PROCESS IN ANY LEGAL PROCEEDING RELATING TO THIS AGREEMENT, THE LOAN OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE SERVED ON INDEMNITOR AT ANY LOCATION.**

**(c)    INDEMNITOR AGREES THAT ANY LEGAL PROCEEDING RELATING TO THIS AGREEMENT, THE LOAN, OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE BROUGHT AGAINST INDEMNITOR IN ANY STATE OR FEDERAL COURT LOCATED OR HAVING JURISDICTION IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED. INDEMNITOR WAIVES ANY OBJECTION TO VENUE IN ANY SUCH COURT AND WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE FROM ANY SUCH COURT.**

NY 00058779 v2

12

(d)    INDEMNITOR AGREES THAT IT WILL NOT COMMENCE ANY LEGAL PROCEEDING AGAINST LENDER RELATING IN ANY MANNER TO THIS AGREEMENT, THE LOAN OR ANY OF THE OTHER LOAN DOCUMENTS IN ANY COURT OTHER THAN A STATE OR FEDERAL COURT LOCATED IN BOSTON, MASSACHUSETTS, OR IF A LEGAL PROCEEDING IS COMMENCED BY LENDER AGAINST INDEMNITOR IN A COURT IN ANOTHER LOCATION, BY WAY OF A COUNTERCLAIM IN SUCH LEGAL PROCEEDING.

(e)    INDEMNITOR HEREBY WAIVES TRIAL BY JURY IN ANY LEGAL PROCEEDING RELATING TO THIS AGREEMENT, THE LOAN OR ANY OF THE OTHER LOAN DOCUMENTS.

3.21    <u>Residence/Community Property Provisions</u>.

(a)    David Hall represents and warrants that his providence of residence is Alberta, Canada.

(b)    Trent Claughton represents and warrants that his providence of residence is Alberta, Canada.

(c)    Marco DeDeominicis represents and warrants that his providence of residence is Alberta, Canada.

(d)    Denny Chow represents and warrants that his providence of residence is Alberta, Canada.

3.22    <u>Additional Waivers</u>.  Without limiting the generality, scope or meaning of any other provision of this Agreement:

(a)    Indemnitor hereby waives any and all benefits and defenses under California Civil Code Section 2810 and agrees that by doing so Indemnitor shall be liable even if Borrower had no liability at the time of execution of the Note, the Loan Agreement, the Security Instrument or any other Loan Document, or thereafter ceases to be liable.  Indemnitor hereby waives any and all benefits and defenses under California Civil Code Section 2809 and agrees that by doing so Indemnitor's liability may be larger in amount and more burdensome than that of Borrower.  Indemnitor waives all rights to require Lender to pursue any other remedy it may have against Borrower, or any member of Borrower, including any and all benefits under California Civil Code Section 2845, 2849 and 2850 until such time as all Obligations owing to Lender are fully satisfied.  Indemnitor further waives any rights, defenses and benefits that may be derived from Sections 2787 to 2855, inclusive, of the California Civil Code or comparable provisions of the laws of any other jurisdiction and further waives all other suretyship defenses Indemnitor would otherwise have under the laws of California or any other jurisdiction.

(b)    Upon a default by Borrower, Lender in its sole discretion, without prior notice to or consent of Indemnitor, may elect to:  (i) foreclose either judicially or nonjudicially against any real or personal property security it may hold for the Loan, (ii) accept a transfer of any such security in lieu of foreclosure, (iii) compromise or adjust the Loan or any part of it or make any other accommodation with Borrower or any Indemnitor, or (iv) exercise any other

remedy against Borrower or any security.  No such action by Lender shall release or limit the liability of Indemnitor, who shall remain liable under this Agreement after the action, even if the effect of the action is to deprive Indemnitor of any subrogation rights, rights of indemnity, or other rights to collect reimbursement from Borrower for any sums paid to Lender, whether contractual or arising by operation of law or otherwise.  Indemnitor expressly agrees that under no circumstances shall it be deemed to have any right, title, interest or claim in or to any real or personal property to be held by Lender or any third party after any foreclosure or transfer in lieu of foreclosure of any security for the Loan.

      (c)    Regardless of whether Indemnitor may have made any payments to Lender, Indemnitor hereby waives: (i) all rights of subrogation, indemnification, contribution and any other rights to collect reimbursement from Borrower or any other party for any sums paid to Lender, whether contractual or arising by operation of law (including the United States Bankruptcy Code or any successor or similar statute) or otherwise, (ii) all rights to enforce any remedy that Lender may have against Borrower, and (iii) all rights to participate in any security now or later to be held by Lender for the Loan.  The waivers given in this subsection (c) shall be effective until the Loan has been paid and performed in full.

      (d)    Indemnitor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Indemnitor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.  Indemnitor further waives any right to a fair value hearing under California Code of Civil Procedure Section 580a, or any other similar law, to determine the size of any deficiency owing (for which any Indemnitor would be liable hereunder) following a non-judicial foreclosure sale.

      (e)    Without limiting the foregoing or anything else contained in this Agreement, Indemnitor waives all rights and defenses that Indemnitor may have because Borrower's Loan is secured by real property.  This means, among other things:

           (i)    that Lender may collect from Indemnitor without first foreclosing on any real or personal property collateral pledged by Borrower; and

           (ii)    if Lender forecloses on any real property collateral pledged by Borrower:  (x) the amount of the Loan may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (y) Lender may collect from Indemnitor even if Lender, by foreclosing on the real property collateral, has destroyed any right Indemnitor may have to collect from Borrower.

      This subsection (e) is an unconditional and irrevocable waiver of any rights and defenses Indemnitor may have because Borrower's Loan is secured by real property.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

NY 00058779 v2

14

(f)      Indemnitor waives all rights and defenses arising out of any failure of the Lender to disclose to the Indemnitor any information relating to the financial condition, operations, properties or prospects of Borrower now or in the future known to the Lender (Indemnitor waiving any duty on the part of the Lender to disclose such information).

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Indemnitor has executed this Agreement as of the day and year first above written.

**BORROWER**:

**POWAY PROPERTY LP**, a Delaware limited partnership

By:  Capexco US GP Inc., its general partner

    By:
    Name:  Trent Claughton
    Title:  President

**INDIVIDUAL INDEMNITOR**:

DAVID HALL

TRENT CLAUGHTON

MARCO DEDOMINICIS

DENNY CHOW

[signature page to Poway Outpost Hazardous Substances Indemnity Agreement]

**EXHIBIT A**
**Page 191**

## EXHIBIT A

### LEGAL DESCRIPTION

The land referred to is situated in the County of San Diego, City of Poway, State of California, and is described as follows:

PARCEL 1:
THE EASTERLY 249.50 FEET OF THE NORTHERLY 320.00 FEET OF THE WEST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 13, TOWNSHIP 14 SOUTH, RANGE 2 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF POWAY, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO UNITED STATES GOVERNMENT SURVEY.

PARCEL 2:
AN EASEMENT FOR INGRESS AND EGRESS FOR ROAD AND PUBLIC UTILITY PURPOSES OVER, UNDER, ALONG AND ACROSS THE SOUTHERLY 40.00 FEET OF THE NORTHERLY 360.00 FEET OF THE WEST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 13, TOWNSHIP 14 SOUTH, RANGE 2 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO UNITED STATES GOVERNMENT SURVEY.

EXCEPTING THEREFROM THE EASTERLY 70.00 FEET.

APN: 317-473-20

**EXHIBIT A**
**Page 191**

# EXHIBIT 7

**EXHIBIT A**
**Page 193**

## ALLONGE

ENDORSEMENT to that certain Promissory Note dated as of October 22, 2020 in the stated principal amount of TWENTY-ONE MILLION ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($21,100,000.00), made by POWAY PROPERTY LP, a Delaware limited partnership, to and in favor of UC FUNDING, LLC, a Delaware limited liability company.

Pay to the order of UC POWAY POST HOLDER, LLC, a Delaware limited liability company ("**Assignee**"), without recourse, representation or warranty, express or implied, except as expressly set forth in the General Assignment and Assumption delivered by the undersigned to Assignee concurrently herewith.

Dated:  October 22, 2020

[the remainder of this page is intentionally left blank]

NY 00059790 v1

**EXHIBIT A**
**Page 193**

**UC FUNDING, LLC**, a Delaware limited liability company

By: _____
Name: _Lames Osten_____
Title: _Authorized Signatory_____

[signature page to Poway Outpost Allonge]

**EXHIBIT A**
**Page 195**

## GENERAL ASSIGNMENT AND ASSUMPTION

THIS GENERAL ASSIGNMENT AND ASSUMPTION (this "**Assignment**") is made as of this 22nd day of October, 2020, by and between **UC FUNDING, LLC**, a Delaware limited liability company ("**Assignor**"), and **UC POWAY POST HOLDER, LLC**, a Delaware limited liability company ("**Assignee**").

## RECITALS

A.      Assignor has made a $21,100,000 loan (the "**Loan**") to Poway Property LP, a Delaware limited partnership.

B.      The Loan is evidenced and secured by the documents listed in Schedule 1 attached hereto and made a part hereof (the "**Loan Documents**").

C.      Assignor has agreed to convey to Assignee all of Assignor's right, title and interest in and to the Loan Documents and Assignee agrees to accept and assume the Loan Documents.

## AGREEMENT

NOW, THEREFORE, in consideration of good and valuable consideration, the mutual receipt and legal sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.      Assignment.  Assignor hereby sells, assigns, transfers and conveys to Assignee, without any representation, warranty or recourse other than as specifically provided for herein, all of Assignor's right, title and interest in and to the Loan Documents.

2.      Assumption.  Assignee hereby accepts and assumes all duties, liabilities and obligations of every nature whatsoever with respect to the Loan and the Loan Documents existing as of the date hereof, including, without limitation, such duties, liabilities and obligations which have been, or should have been, fulfilled or completed by Assignor prior to the date hereof, and any executory duties, liabilities or obligations.

3.      Assignor's Representation and Warranty.  Assignor hereby represents and warrants to Assignee that, as of the date hereof, the following are true and accurate statements in all material aspects:

(a)      Right to Convey.  Assignor is presently the sole holder of all of the Loan Documents, has not assigned, pledged, promised, encumbered or otherwise transferred any interest in the Loan or the Loan Documents to any other person or party, and has full right and authority to sell, assign and transfer the Loan Documents to Assignee.

(b)      Loan Documents.  The Loan Documents have not been satisfied, canceled or subordinated by Assignor, and Assignor has not released any of the collateral from the lien of the Loan Documents.  The Loan Documents are listed in Schedule 1 attached

NY 00059791 v1

**EXHIBIT A**
**Page 195**

**EXHIBIT A**
**Page 196**

hereto, and except as set forth therein, the Loan Documents have not been modified, amended, supplemented or restated.

(c)    As determined in accordance with Assignor's books and records, the following amounts were outstanding under the Loan Documents as of the date of this Assignment:

| | |
|---|---|
| Principal: | $21,100,000.00 |
| Accrued Interest: | $0.00 |
| Default Interest: | $0.00 |
| Late Charges: | $0.00 |

(d)    UC Credit Services LLC, as the servicer for the Loan, currently is holding an Impound Reserve in the amount of $100,000.00.

4.    <u>Successors</u>.  This Assignment shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

5.    <u>Governing Law</u>.  This Assignment shall be governed by the laws of the State of New York.

6.    <u>WAIVER OF JURY TRIAL</u>.    ASSIGNOR AND ASSIGNEE BOTH IRREVOCABLY WAIVE ANY AND ALL RIGHT EITHER PARTY MIGHT HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS ASSIGNMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS ASSIGNMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. EACH OF ASSIGNOR AND ASSIGNEE ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.

[the remainder of this page is intentionally left blank]

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the date first above written.

**ASSIGNOR**:

**UC FUNDING, LLC**, a Delaware limited liability company

By:
Name: James Osten
Title: Authorized Signatory

**ASSIGNEE**:

**UC POWAY POST HOLDER, LLC**, a Delaware limited liability company

By:    UC Poway Outpost Holder Member, LLC, a Delaware limited liability company, its sole member

By:
Name: James Osten
Title: Authorized Signatory

[signature page to Poway Outpost General Assignment]

**EXHIBIT A**
**Page 198**

## SCHEDULE 1

## LOAN DOCUMENTS

1.     Promissory Note dated as of October 22, 2020 in the original principal amount of $21,100,000.00 by Poway Property LP, a Delaware limited partnership ("**Borrower**"), to and in favor of UC Funding, LLC, a Delaware limited liability company ("**Assignor**").

2.     Loan Agreement dated as of October 22, 2020 by and between Borrower and Assignor.

3.     Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated as of October 22, 2020 by Borrower to Assignor and recorded in the Office of the San Diego County Recorder of Deeds (the "**Recorder's Office**").

4.     Assignment of Leases and Rents dated as of October 22, 2020 by Borrower to Assignor and recorded in the Recorder's Office.

5.     Guaranty of Payment dated as of October 22, 2020 by David Hall, Trent Claughton, Marco DeDominicis, and Denny Chow, each an individual (collectively, "**Guarantor**"), in favor of Assignor.

6.     Completion Indemnity and Guaranty Agreement dated as of October 22, 2020 by Borrower and Guarantor in favor of Assignor.

7.     Hazardous Substances Indemnity Agreement dated as of October 22, 2020 by Guarantor and Borrower in favor of Assignor.

8.     Assignment of Contracts, Licenses, Permits, Agreements and Other Rights dated as of October 22, 2020 by Borrower in favor of Assignor.

9.     Certification of Underwriting by Borrower in favor of Assignor.

10.     UCC-1 Financing Statement showing Borrower, as debtor, and Assignor, as Secured Party, and to be filed with the Delaware Secretary of State.

NY 00059791 v1

**EXHIBIT A**
**Page 198**

## ASSIGNMENT OF DEED OF TRUST AND OTHER RECORDED DOCUMENTS

**UC FUNDING, LLC**
(Assignor)

to

**UC POWAY POST HOLDER, LLC**
(Assignee)

Dated as of October 22, 2020

Premises located at:  13247 Poway Road, Poway, California

### PREPARED BY AND UPON RECORDATION RETURN TO:

Federman Steifman LLP
414 North Orleans Street
Suite 210
Chicago, Illinois 60654
Attention:  Andrew Lampert

NY 00059792 v1

**EXHIBIT A**
**Page 200**

## ASSIGNMENT OF DEED OF TRUST AND OTHER RECORDED DOCUMENTS

**UC FUNDING, LLC**, a Delaware limited liability company having an address c/o UC Credit Services LLC, 745 Boylston Street, Suite 502, Boston, Massachusetts 02116 ("**Assignor**"), as the holder of the instruments hereinafter described and for valuable consideration hereby endorses, assigns, sells, transfers and delivers to **UC POWAY POST HOLDER, LLC**, a Delaware limited liability company having an address c/o UC Credit Services LLC, 745 Boylston Street, Suite 502, Boston, Massachusetts 02116 ("**Assignee**"), its successors, participants and assigns, all right, title and interest of Assignor in and to:

A.      Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated as of October 22, 2020 by Poway Property LP, a Delaware limited partnership ("**Borrower**"), in favor of Assignor, which was recorded in the Office of the San Diego County Recorder of Deeds (the "**Recorder's Office**") October 22, 2020 as Instrument Number 2020-0649142; and

B.      Assignment of Leases and Rents dated as of October 22, 2020 from Borrower to Assignor, which was recorded in the Recorder's Office on October 22, 2020 as Instrument Number 2020-0649143;

which documents secure repayment of a loan made by Assignor to Borrower in the original principal amount of $21,100,000.00 and encumber the property described on **Exhibit A** attached hereto and made a part hereof (the "**Property**")

TOGETHER WITH any and all notes and obligations therein described, the debt and claims secured thereby and all sums of money due and to become due thereon, with interest provided for therein, and Assignor hereby irrevocably appoints Assignee hereunder its attorney to collect and receive such debt, and to foreclose, enforce and satisfy the foregoing the same as it might or could have done were these presents not executed, but at the cost and expense of Assignee; and

TOGETHER WITH any and all other liens, privileges, security interests, rights, entitlements, equities, claims and demands as to which Assignor hereunder possesses or to which Assignor is otherwise entitled as additional security for the payment of the notes and other obligations described herein.

TOGETHER WITH all of Assignor's right, title and interest in and to (a) the Note and any and all other indebtedness evidenced thereby, (b) all monies due and to become due thereon and all interest thereon, (c) the Property and the other collateral conveyed and encumbered by the Security Instrument, (d) all other documents securing said Note or other indebtedness secured by the Security Instrument, including but not limited to the Loan Documents (defined therein), and (e) all of the rights, powers, interests and privileges conferred by, under or by virtue of the Security Instrument, the Note, the Loan Documents or any such other documents executed in connection therewith upon the Assignor as "Lender" thereunder.

NY G0059792 v1

**EXHIBIT A**
**Page 200**

This Assignment shall be governed in all respects by the laws of the State of California and shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective successors and assigns.

[the remainder of this page is intentionally left blank]

IN WITNESS WHEREOF, Assignor has caused this instrument to be executed by its duly authorized officer as of the 22 day of October, 2020.

**ASSIGNOR**:

**UC FUNDING, LLC**, a Delaware limited liability company

By:
Name: James M Osten
Title: CFO

COMMONWEALTH OF MASSACHUSETTS )
 ) SS

COUNTY OF SUFFOLK )

The foregoing instrument was acknowledged before me this 21ˢᵗ day of October, 2020, by James Osten, an authorized signatory of UC Poway Post Holder Member, LLC, a Delaware limited liability company, the sole member of UC Poway Post Holder, LLC, a Delaware limited liability company, on behalf of such company.

Printed Name: JAMES Rizzitano
Notary Public

JAMES M. RIZZITANO
Notary Public
Commonwealth of Massachusetts
My Commission Expires
September 14, 2023

[signature page to Poway Outpost Assignment of Recorded Documents]

**EXHIBIT A**

**Page 203**

## EXHIBIT A

## LEGAL DESCRIPTION

The land referred to is situated in the County of San Diego, City of Poway, State of California, and is described as follows:

PARCEL 1:

THE EASTERLY 249.50 FEET OF THE NORTHERLY 320.00 FEET OF THE WEST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 13, TOWNSHIP 14 SOUTH, RANGE 2 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF POWAY, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO UNITED STATES GOVERNMENT SURVEY.

PARCEL 2:

AN EASEMENT FOR INGRESS AND EGRESS FOR ROAD AND PUBLIC UTILITY PURPOSES OVER, UNDER, ALONG AND ACROSS THE SOUTHERLY 40.00 FEET OF THE NORTHERLY 360.00 FEET OF THE WEST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 13, TOWNSHIP 14 SOUTH, RANGE 2 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO UNITED STATES GOVERNMENT SURVEY.
EXCEPTING THEREFROM THE EASTERLY 70.00 FEET.

APN: 317-473-20

**EXHIBIT A**

**Page 203**

# EXHIBIT 8

## Keith Cochran

| | |
|---|---|
| **From:** | Denny Chow <dc@capexcofunds.com> |
| **Sent:** | Tuesday, December 22, 2020 12:48 PM |
| **To:** | AJ Vazquez; Ming Boyd |
| **Cc:** | dhall3315@gmail.com |
| **Subject:** | RE: UC Draw#3 - 2020.11 |

Hi AJ,

In regards to the concrete overages, we have determined that under KD Stahl's watch, the de-watering contractor, Griffin Dewatering, who designed and installed the dewatering system, failed to drill their dewatering wells to the required depth causing considerable delay and costs. KD Stahl was working with Griffin on the assumption that Griffin would re-imburse the Project for these cost, due to Griffin's error. KD advised that in around late October, it became aware that Griffin had filed an insurance claim and been denied under the Project's wrap policy indicating that Griffin was not going to reimburse KD Stahl for the overruns. As you know, we have a GMAX contract with KD Stahl. However, this increase in the budget is the result of Capexco trying to work with KD Stahl, the General Contractor to complete the project while at the same time reserving Capexco remedies. Capexco is working with our insurance broker and insurance lawyer to file an insurance claim though our builder's risk policy.

We have been working with Shawn Heyl and Counterpointe for an increase in the PACE to help cover these overages as a solution to this to ensure that the project gets completed. Shawn has informed Domenico at UC Funds of this. We should be getting a term sheet from Adam at Counterpointe in short order that we can forward to Domenico.

Please let us know if you have any additional questions.

Thanks.
Denny

**From:** AJ Vazquez <avazquez@ucfunds.com>
**Sent:** Tuesday, December 22, 2020 11:10 AM
**To:** Ming Boyd <mboyd@capexcofunds.com>
**Cc:** Denny Chow <dc@capexcofunds.com>; dhall3315@gmail.com
**Subject:** RE: UC Draw#3 - 2020.11

Hi Ming,

I heard that there is an overage of ~$2M in concrete and that you're seeking additional PACE funds?

**From:** Ming Boyd <mboyd@capexcofunds.com>
**Sent:** Monday, December 21, 2020 1:48 PM
**To:** AJ Vazquez <avazquez@ucfunds.com>
**Cc:** Denny Chow <dc@capexcofunds.com>; dhall3315@gmail.com
**Subject:** Re: UC Draw#3 - 2020.11

Hi AJ
How are you doing?
Have you had a chance to review?

Thanks,

ming

*PLEASE NOTE OUR NEW ADDRESS - -*

14555 Symons Valley Rd NW

Calgary, AB T3R 1E7

Canada

On Mon, Dec 14, 2020 at 6:55 AM AJ Vazquez <avazquez@ucfunds.com> wrote:

Ming, likewise.

Thanks. I'll begin to review.

-AJ

**From:** MBOYD@capexcofunds.com <mboyd@capexcofunds.com>
**Sent:** Saturday, December 12, 2020 5:23 PM
**To:** AJ Vazquez <avazquez@ucfunds.com>
**Cc:** 'Denny Chow' <dc@capexcofunds.com>; dhall3315@gmail.com
**Subject:** FW: UC Draw#3 - 2020.11

Hi AJ,

How are you doing? Hope you've had a pleasant Thanksgiving.

Draw #3 is attached for your review, please let me know if there are any edits required

Give me a shout if we need to chat further – 403-702-2433.

2

**EXHIBIT A**
**Page 207**

Thanks,

ming

*PLEASE NOTE OUR NEW MAILING ADDRESS - -*

14555 Symons Valley Rd NW

Calgary, AB T3R 1E7

Canada

# EXHIBIT 9

**EXHIBIT A**
**Page 209**

## Keith Cochran

| | |
|---|---|
| **From:** | Denny Chow <dc@capexcofunds.com> |
| **Sent:** | Thursday, January 28, 2021 4:23 PM |
| **To:** | Cathy Oniffrey |
| **Cc:** | dhall3315@gmail.com; Greg Loy; AJ Vazquez; Greg Trotter; Lampert, Andrew; James Osten; Justin White; Trent Claughton; Marco DeDominicis |
| **Subject:** | RE: Poway Outpost meeting with GC |

Hi all,

Please find attached link with the items discussed today on our call.

https://drive.google.com/drive/folders/1-zvc8mkvadMQhq1iR7U47bgbThQF1Fbd?usp=sharing

1. Capexco's calculated damages, which would likely be in our insurance claim.  UC Funds has no responsibility to this amount, it is just included for your information.
2. KD Stahl Budget which shows the additional cost to complete of $4.2M by category.  Note, we've calculated what could be the damages from Griffin in column M (that is not a number provided by KD Stahl).
3. I've included a "Pending Change Order" directory for when the change orders are available to make up the $4.2M of additional costs.

Please let me know if you have any further questions or require any more documents before our next call and I can chase down what is required.

Thanks.
Denny

**From:** Cathy Oniffrey <cmo@ucfunds.com>
**Sent:** Thursday, January 21, 2021 4:39 PM
**To:** Denny Chow <dc@capexcofunds.com>
**Cc:** dhall3315@gmail.com; Greg Loy <greg@kdstahl.com>; AJ Vazquez <avazquez@ucfunds.com>; mboyd@capexcofunds.com; Greg Trotter <gtrotter@cbcbuildingsolutions.com>; Lampert, Andrew (ALampert@federmansteifman.com) <alampert@federmansteifman.com>; James Osten <JOsten@ucfunds.com>; Justin White <justin@opus.attorney>
**Subject:** Re: Poway Outpost meeting with GC

Great pls be sure it is good for counsel as well.


Cathy Oniffrey, Managing Director
Asset Management|Capital Markets|Origination

(O) (857) 288-2822
(C) (914) 774-9051

CMO@UCFunds.com

**EXHIBIT A**

**Page 210**

**From:** Denny Chow <dc@capexcofunds.com>
**Sent:** Thursday, January 21, 2021 6:07:17 PM
**To:** Cathy Oniffrey <cmo@ucfunds.com>
**Cc:** dhall3315@gmail.com <dhall3315@gmail.com>; Greg Loy <greg@kdstahl.com>; AJ Vazquez <avazquez@ucfunds.com>; mboyd@capexcofunds.com <mboyd@capexcofunds.com>; Greg Trotter <gtrotter@cbcbuildingsolutions.com>; Lampert, Andrew (ALampert@federmansteifman.com) <alampert@federmansteifman.com>; James Osten <JOsten@ucfunds.com>; Justin White <justin@opus.attorney>
**Subject:** Re: Poway Outpost meeting with GC

Hi Cathy
11am EST works for Capexco and our legal counsel.
Thanks.
Denny

> On Jan 21, 2021, at 3:30 PM, Cathy Oniffrey <cmo@ucfunds.com> wrote:
>
> All,
>
> We would like to have a call tomorrow 1/22 with all parties and their Counsel. I would suggest 11 am EST.
>
> Please let me know if this will work for all parties.
>
> Thank you, Cathy
>
> Cathy Oniffrey
> Managing Director
> Asset Mgt, Cap Mkts, Originations
>
> 914 774 9051
> CMO@UCFunds.com